**In re CHICAGO, N. S. & M. R. CO.**

**REED et al. v. CHICAGO, N. S. & M. R. CO.**

No. 8082.

Circuit Court of Appeals, Seventh Circuit.

Dec. 2, 1942.

Austin L. Wyman and Daniel P. Nagle, both of Chicago, Ill., for appellants.

Frederick E. Stout, of Chicago, Ill., for intervener.

Addison L. Gardner, of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal presents the question whether Chapter VIII or Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 201 et seq., § 501 et seq., is the appropriate channel for reorganization of the debtor railroad. Feeling uncertain as to the proper mode of procedure, appellants, the owners of two and one-half million dollars of senior lien securities of the Chicago, North Shore and Milwaukee Railroad, filed two separate petitions for its reorganization under the two chapters referred to above. After hearing on the two petitions, consolidated for that purpose, the District Court determined that the proceeding was properly brought under Chapter X, hence approved that petition, dismissing the petition filed under Chapter VIII for lack of jurisdiction. The court, however, continued the equity receivership under which the Road had been operated since September, 1932, pending review by this court of its decision under an appeal which it requested the parties to perfect.

Chapter X, providing for corporate reorganizations, is, by the terms of § 106(3), applicable to "any railroad corporation excepting a railroad corporation authorized to file a petition under section 77 of this Act [section 205 of this title]." 11 U.S.C.A. § 506(3). Chapter VIII, section 77, sub. m, defines the railroad corporation to which that section is applicable as "any common carrier by railroad engaged in the transportation of persons or property in interstate commerce, except a street, a suburban, or interurban electric railway which is not operated as a part of a gen-

eral railroad system of transportation or which does not derive more than 50 per centum of its operating revenues from the transportation of freight in standard steam railroad freight equipment." 11 U.S.C.A. § 205, sub. m.

The North Shore Road has been involved in a number of proceedings requiring its classification under various statutes. So far as we know, the first of these proceedings arose under the Locomotive-Inspection Act, 45 U.S.C.A. §§ 22–34, to which the Interstate Commerce Commission found the Road subject, holding in 1927 that it could not be properly classed as a street, suburban or interurban electric railway, exempt from operation of the Act, under the rules laid down by the Commission for determining such classification. Rules for Testing Other than Steam Power Locomotives. 122 I.C.C. 414.

Thereafter the question arose whether securities issued by the Road had to be approved by the Commission, as provided by § 20a of the Interstate Commerce Act, 49 U.S.C.A. § 20a. In a suit brought by the United States to enjoin the Road from issuing any securities or assuming obligations without authority of the Commission, the Supreme Court in 1933 upheld the decision of the District Court that this road was "an independently operated electric interurban railway expressly excepted from the requirements of the section." United States v. Chicago, N. S. & M. R. Co., 288 U.S. 1, 53 S.Ct. 245, 246, 77 L.Ed. 583. For purposes of § 20a, a carrier was defined as "a common carrier by railroad (except a street, suburban, or interurban electric railway which is not operated as a part of a general steam railroad system of transportation) * * *."

The question next arose whether the classification of the Road for purposes of the Interstate Commerce Act, thus approved by our Supreme Court, determined its classification for other purposes and in cases arising under other statutes containing similar but not identical exceptions. In 1939, after the Commission had ruled that the Road was subject to the provisions of the Railway Labor Act, the Railroad Retirement Act, and the Carriers Taxing Act, 45 U.S.C.A. §§ 151 et seq.; 228a et seq.; and 261 et seq., the receiver of the Road sued in the District Court to enjoin its prosecution under the Railway Labor Act, and for authority to continue to refrain from complying with the provisions of the Railroad Retirement and Carriers Taxing Acts. These three Acts contained practically identical definitions and exceptions. Each specifically exempted from its operation, "any street, interurban, or suburban electric railway, unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation now or hereafter operated by any other motive power." 45 U.S.C.A. §§ 151; 228a; and 261. Each Act authorized and directed the Interstate Commerce Commission upon request of the Mediation Board, the Railroad Retirement Board, or the Commissioner of Internal Revenue, respectively, or upon complaint of any party interested, to "determine after hearing whether any line operated by electric power falls within the terms of this proviso."

In disposing of the receiver's suit, the District Court had before it the report of the Commission finding that, "(a) the North Shore is not a street, interurban or suburban electric railway within the meaning of the exemption provisos under consideration, and (b) it is a part of the general steam-railroad system of transportation," and all the evidence heard by the Commission, and upon which its report was based. The court held that the Commission's determination was supported by substantial evidence and was neither arbitrary nor capricious. It expressly refrained from making any independent finding as to the manner in which the line was operated, giving as its reason, the fact of the statutory authorization to the Commission to make it, and that the only function of the courts was to determine whether such finding was legally made and supported by substantial evidence. This court, on appeal, affirmed the decision, determining that the Commission was not bound by the earlier judicial classification of the Road. Sprague v. Woll, 7 Cir., 122 F.2d 128, certiorari denied, 314 U.S. 669, 62 S.Ct. 131, 86 L.Ed. 535. Thus, it will be noted that the question presented in this proceeding was as to the scope of the judicial review of a determination by the Interstate Commerce Commission as to a matter which it was expressly directed by Congress to make.

It was the diversity of classification of the Road in the earlier proceedings which gave rise to appellants' uncertainty as to

the proper mode of procedure for its reorganization, and impelled them to file a petition under each of the two possible sections of the Bankruptcy Act. With certain minor additions (a series of statements analyzing operating revenues of the Road from 1938 to 1941, and an October, 1941, timetable), the petitions were considered on the same evidence as that presented to the Commission for its determination of the status of the Road for purposes of the Labor Acts. The court was convinced that it was not bound by the decision of the Commission based on the same evidence, but that it was duty bound to consider the facts and law independently, and use its own judgment in reaching a conclusion, instead of merely acting as a reviewing court as it had been its duty to act in the Labor cases.

█ We think there was no error in the court's interpretation of its functions under the various statutes. This is not to say that no weight is to be given to the decision of an administrative body entered in the discharge of its statutory duty, when the same facts are presented to a court for interpretation under a different statute which provides for judicial rather than administrative determination of the facts. And were the statutory definitions and exemptions under which the Commission and the court were variously authorized to act identical, we are of the opinion that the court should find the determination of the administrative body, under rules and tests consistently followed by it with judicial approval, very persuasive, and further, that the court might well find it advisable to adopt the same general rules and tests as those adopted by the administrative body in the performance of its statutory duty. [1]

Having concluded that the court was authorized to determine the question of the Road's classification independently, with due regard to a previous determination by the Commission, the question then is whether the court was correct in its decision that the Road was not eligible for reorganization under Chapter VIII, section 77, hence that Chapter X was the appropriate medium for its reorganization. We note that one important new element appeared in the section 77 definition of a carrier for purposes of the Bankruptcy statute. We refer to the statutory alternate exception of the street, suburban or interurban electric railway, "which does not derive more than 50 per centum of its operating revenues from the transportation of freight in standard steam railroad freight equipment." We consider this of considerable significance in the light of the emphasis placed by the Commission on the carriage of freight in its classification of the various roads.

The Commission has formulated a definition in harmony with its various decisions, and which it seems to have followed generally, "* * * an electric railway which is engaged in the general transportation of freight, *whether the revenue therefrom is greater or less than its passenger revenue,* which handles the bulk of such freight in standard equipment similar to that used by the steam railroads, which freely interchanges the same with the steam railroads for transportation to or from points on their lines, a considerable portion thereof being handled in interstate or foreign commerce, and which participates in joint rates with the steam railroads for interstate transportation, has more of the characteristics of a commercial railroad operated by electric power than of an interurban as that term is used in the exemption provision under consideration." (Our italics.) Texas Electric Railway, 208 I.C.C. 193; upheld, Texas Electric Ry. Co. v. Eastus, D.C., 25 F.Supp. 825, affirmed without opinion, 308 U.S. 512, 60 S.Ct. 134, 84 L.Ed. 437.

It is in the light of this definition, with its primary emphasis placed on the revenues from the transportation of freight, whether such revenues are greater or less than those from the passenger traffic, that we consider the introduction by Congress of the alternate requirement of 50% of revenues from freight to prevent operation of the exemption provided in § 77, significant. We think there can be no question but that this Road is not "operating as a part of a general steam-railroad system of transportation." (Cf. Hudson & Manhattan Ry. Co. v. Hardy, 2 Cir., 103 F.2d 327, 328, where the court upheld a determination by the Commission that the Road there involved, though an interurban electric railway, was subject to the Railway

---

[1] For a discussion of the difference between the relative functions of courts and Commission under the various statutes, see United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070; Shields v. Utah Idaho R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111.

Labor Act because it was operating as a part of a general railroad system of transportation—in that case, the Pennsylvania Railroad.) In the case at bar, the court found the fact, amply supported by evidence, that none of the securities of the North Shore were owned by any other railroad, and that no other road or system had or exercised any management, control or supervision over the North Shore.

■ In Sprague v. Woll, supra, the Commission had held that the Road was part of *the* general steam railroad system of transportation, on the basis of the characteristics referred to above, including a substantial revenue from the carriage of freight in standard equipment. In view of this fact, we did not consider it necessary, in reviewing the case, to discuss the preceding limitation on the exemption contained in the Labor statutes, "unless such railway is operating as a part of *a* general * * * system * * *," although the Commission and the United States Attorney had discussed the distinction inherent in the two phrases. In the case now before us, however, a different exclusion from the exemption is involved. Since the Road is not eligible for reorganization under section 77 if it is a street, a suburban or interurban electric railway, not operated as a part of a general railroad system of transportation *or* which does not derive more than 50% of its operating revenues from the transportation of freight in standard steam railroad freight equipment, it becomes necessary for us to determine the meaning of the first phrase. We agree with the District Court that "the use of the word 'a' before the words 'general railroad system' * * * clearly denotes that Congress there contemplated some *particular* operating railroad system exercising management, control and supervision over a particular street, suburban or interurban." Hence, in view of the evidence that no such control or supervision exists, the Road is not eligible for reorganization under section 77 unless it derives more than 50% of its revenues from the transportation of freight. As to this point, the court found that the North Shore was essentially a passenger railroad, with its revenues from passenger transportation averaging about 77% of its transportation revenues, and from freight, about 23%. Only 17% of its operating revenues were derived from the transportation of freight in standard steam railroad freight equipment.

■ We find no error in the ruling of the District Court that the North Shore is an interurban electric railway which is not operated as a part of a general railroad system of transportation and does not derive more than 50% of its operating revenues from the transportation of freight in standard steam railroad freight equipment, hence that it is not eligible for reorganization under Chapter VIII of the Bankruptcy Act, section 77, and that the petition under Chapter X was properly filed.

Decree affirmed.