### In re FUNDING SYSTEMS RAILCARS, INC., Debtor.

#### No. 81 B 11964.

United States Bankruptcy Court,
N. D. Illinois, E. D.

Dec. 3, 1981.

Joseph Bisceglia, Chicago, Ill., for plaintiffs.

Gerald Munitz, Chicago, Ill., for debtor.

## OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause comes to be heard on the complaint of Greycas and Avco-Paul Revere Co.'s assertion of the applicability of 11 U.S.C. § 1168 in the captioned matter.

Plaintiffs demand that all obligations to them be brought current within 60 days of the filing of this Chapter 11 proceeding. Both plaintiffs allege a security interest in rolling stock equipment allegedly in the possession of the debtor. Since immediate repossession of rolling stock would abort this Chapter 11 corporate reorganization, a declaratory judgment on the issue of the applicability of 11 U.S.C. § 1168 is appropriate. 28 U.S.C. § 2201.

### I

The evidence presented is as follows:

1. Two wholly owned subsidiaries of the debtor, Funding Systems Railcars, Inc. ("FSI"), are railroads within the definition of "railroad" in 11 U.S.C. § 101(33).

2. The two subsidiaries, namely the Wisconsin Southern Railroad ("WSOR") and the Upper Merion and Plymouth Railroad ("UMP"), together lease approximately 75% of the rolling stock available through the debtor.

3. FSI, the debtor, receives approximately 50% of its gross revenue from the leases to its subsidiaries.

4. The greatest portion of the rest of the debtor's gross income comes from interest on notes financing FSI's lease arrangements with the plaintiffs herein. This figure is said to be misleading by the plaintiffs since the income from the notes is almost entirely set off by the payments on the leases to the plaintiffs and therefore they argue that the "real" income for FSI comes from its sublease arrangements with WSOR and UMP in addition to claimed depreciation.

5. Although the subsidiary short line railroads own and lease rolling stock, FSI owns no rolling stock and its sole source of income vis-a-vis the rolling stock is through lease payments to it.

6. FSI itself does not engage in the business of transporting passengers or property as a common carrier.

7. The debtor neither owns trackage nor has certificates of convenience or necessity from the Interstate Commerce Commission.

It makes no reports to any federal or state railroad regulatory agencies. None have been required of it.

8. Upon an offer of proof by the plaintiffs it was asserted that the defendant FSI has and continues to commingle funds with and between its subsidiaries.

## II

Subchapter IV of Chapter 11 of the Bankruptcy Reform Act of 1978 is entitled "Railroad Reorganization." That section provides in pertinent part as follows:

(a) The right of a secured party with a purchase-money equipment security interest in, or of a lessor or conditional vendor of, whether as trustee or otherwise, rolling stock equipment or accessories used on such equipment, including superstructures and racks, that are subject to a purchase-money equipment security interest granted by, leased to, or conditionally sold to the debtor to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement, lease, or conditional sale contract, as the case may be, is not affected by Section 362 or 363 of this or by any power of the court to enjoin such taking of possession, unless—

(1) before 60 days after the date of the commencement of a case under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor under such security agreement, lease or conditional sale contract as the case may be; and

(2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement, lease or conditional sale contract, as the case may be . . . [is cured]; [11 U.S.C. § 1168 (1978)]

The predecessor of this provision appeared in Section 77(j) of the Bankruptcy Act of 1898, formerly 11 U.S.C. Ch. VIII, § 205 (1975). The last sentence of that subsection reads:

The title of any owner, whether as trustee or otherwise, to rolling-stock equipment leased or otherwise conditionally sold to the debtor, and any right of such owner to take possession of such property in compliance with the provisions of any such lease or conditional sales contract, shall not be affected by the provisions of this section.

The plaintiffs assert that the debtor is not required to come within the definition of a railroad to be subject to creditors' rights under 11 U.S.C. § 1168. They assert that if the debtor's business *concerns* a railroad and derives a substantial portion of its revenue from a railroad, then rolling stock or equipment leased to it is subject to repossession notwithstanding 11 U.S.C. § 362. The debtor responds that by the terms of 11 U.S.C. § 101(33), defining a railroad, and 11 U.S.C. § 1161 *et seq.*, governing railroad reorganizations, the rights excepted from 11 U.S.C. § 362 apply only where a railroad reorganization is being undertaken. Further, the court notes that absent evidence to the contrary, the filing of a petition under Chapter 11 as a "corporate reorganization" is *prima facie* evidence that the debtor qualifies as a corporate debtor under 11 U.S.C. § 101(8). The definition of a "corporation" under 11 U.S.C. § 101(8) impliedly includes many railroad related businesses which do not come within the definition of railroad in 11 U.S.C. § 101(33).

Neither the plaintiffs Greycas and Avco-Paul Revere Co.'s, nor the defendant-debtor have cited cases in support of their respective positions. Both rely heavily on rules of statutory construction and statements in the House of Representatives as evidence of the intent of the draftsmen. Apparently the only reported case to date which considers the issue of whether 11 U.S.C. § 1168 applies to a Chapter 11 corporate reorganization supports each party's position. *In Re BBT*, 11 B.R. 224, 7 B.C.D. 769 (Bkrtcy.D. Nev., 1981).

The facts of *BBT* in many respects parallel those in the instant case. *BBT* had entered into four conditional sales agreements with the Provident Bank to purchase 200 boxcars. *BBT* then appointed Railway Freight Car Services to manage its boxcars

and subsequently defaulted on the sales agreements. *BBT* filed a petition for relief under 11 U.S.C. § 301 and a plan for corporate reorganization pursuant to 11 U.S.C. § 1121. The Provident Bank sought relief from the automatic stay and in the alternative, moved for summary judgment. Provident asserted that there had been no assurance of adequate protection of its interest in the rolling stock pursuant to 11 U.S.C. § 362(d)(1). In the alternative, Provident moved for summary judgment on the basis that it as a secured creditor in a case concerning a railroad, was not subject to the automatic stay provisions by virtue of 11 U.S.C. § 1168. *In Re BBT*, 11 B.R. 224 at 228.

The motion for summary judgment was denied. In a footnote, the Nevada Bankruptcy Court stated that it "believed Section 1168 applied" but "that it would serve one of the principal purposes of the Code . . . to deny the motion and proceed under Section 362." Re *BBT*, 11 B.R. 224 at Fn. 4.

The rights of creditors to repossess rolling stock absent cure by the trustee (automatically appointed in a railroad reorganization) of all defaults is outlined in 11 U.S.C. § 1168. This is a substantially more stringent requirement than the concept of adequate protection under 11 U.S.C. § 362.

This court finds that, when applicable, 11 U.S.C. § 1168 cannot be subrogated to the less stringent protection offered secured creditors in a corporate reorganization. The Congress weighed the desirability of fostering railroad reorganizations against the creditor's need for security and clearly set forth its priorities.

Therefore if 11 U.S.C. § 1168 applies to a Chapter 11 corporate reorganization, where railroad rolling stock is involved, the adequate protection contemplated in 11 U.S.C. § 362 is insufficient and the case must proceed in accordance with all the provisions of subchapter IV. The matrix of rights and duties under subchapter IV of Chapter 11 interact to assure protection of creditors while also encouraging a successful reorganization in the much regulated railroad industry.

## III

Under former 11 U.S.C. § 77 (railroad reorganizations), eligible debtors were defined as:

(m) The term "railroad corporation" as used in this amendatory section means any common carrier by railroad engaged in the transportation of persons or property in interstate commerce, except a street, a suburban, or inter-urban electric railway which is not operated as a part of a general railroad system of transportation or which does not derive more than 50 per centum of its operating revenues from the transportation of freight in standard steam railroad freight equipment. Wherever used in this section the term "person" shall include an individual, corporation, partnership, association, joint-stock company, unincorporated organization, or a government or political subdivision thereof. [§ 77(m) of the Bankruptcy Act of 1898, former 11 U.S.C. § 205(m) (1975)]

It is noted that some railroads were excluded from reorganization under this section due to an incidental relationship to the rail system. *Matter of Chicago North Shore & Milwaukee R. Co.*, (C.C.A. 7th, 1942), 51 Am.B.R. (N.D.) 667, 131 F.2d 458, *cert. den.* 318 U.S. 768, 63 S.Ct. 762, 87 L.Ed. 1139 (1943). The rights of creditors granted by former 11 U.S.C. § 77 were not applicable generally to creditors of corporations reorganizing under Chapter X of the former Bankruptcy Act. A corporation was defined under the old Act as follows:

. . . (3) "corporation" shall mean a corporation, as defined in this Act, which could be adjudged a bankrupt under this Act; and any railroad corporation excepting a railroad corporation authorized to file a petition under section 77 of this Act . . . [Former 11 U.S.C. Ch. X § 506 (1975)]

Clearly under the Act, certain cases involving railroad rolling stock were intended to be processed without the benefit of § 77(j). This court has found no case of a

railroad corporation excluded under former 11 U.S.C. § 77 which reorganized under 11 U.S.C. Ch. X, §§ 101 *et seq.* (1975) wherein creditors repossessed affected rolling stock equipment.

The plaintiffs assert that the impetus for many of the provisions in former 11 U.S.C. § 77 was a desire to foster creditor certainty and encourage investment in the railroad industry. The need for such encouragement was considered in 1935 when the amendment was adopted. S.Rep.No. 1336, 74th Cong., 1st Sess. 5 (1935). Therefore, plaintiffs urge that possibly ambiguous language in the new Code should be interpreted broadly to serve that purpose. Conversely, the railroad industry today, as well as the Bankruptcy Reform Act of 1978, operate in a somewhat different economic atmosphere than did the courts in 1935. This court is not constrained to read the Code as broadly as did those courts which interpreted its predecessor section.

## IV

Plaintiffs assert that the language in 11 U.S.C. § 103 entitled *Applicability of Chapters*, demonstrates the intention of the draftsmen to permit the application of certain provisions of subchapter IV, such as § 1168, to the instant case. The wording referred to states that "subchapter IV of Chapter 11 of this title applies only in a case under such chapter concerning a railroad". 11 U.S.C. § 103(g). Parallel language appears in two other subsections: "Subchapter III of Chapter 7 of this title applies only in a case under such chapter concerning a stockbroker" 11 U.S.C. § 103(c); and "Subchapter IV of chapter 7 of this title applies only in a case under such chapter concerning a commodity broker except with respect to Section 764(c) which applies to margin payments made by any debtor to a commodity broker or forward contract merchant" 11 U.S.C. § 103(d).

The language relied upon is the term "concerning" as opposed to alternative wording which it is asserted demonstrates an attempt to apply certain provisions of Subchapter IV to any Chapter 11 case.

This court is not persuaded by the plaintiffs' literalistic arguments. Since the plaintiffs concede that not all of Subsection IV is generally applicable, it is left to be determined which, if any of its sections are, are applicable here. The discretion plaintiffs assert is uncharacteristic of the draftsmen, as exemplified in 11 U.S.C. § 103(d) where the general applicability of § 764(c) is clearly excepted. Since the "concerning" language in both 11 U.S.C. §§ 103(c) and 103(d) are identical to that in 11 U.S.C. § 103(g), that exception is superfluous following the debtor's argument.

A similar argument of the plaintiffs is the noted omission of § 1168 from those sections where the court and the trustee shall consider the public interest in addition to the interests of the debtor, creditors and equity security holders, 11 U.S.C. § 1165. One possible explanation of this exclusion is that the sections where public interest is taken into consideration, are sections empowering the court or the trustee, with the court's approval, to act in furtherance of the reorganization. This is not true of 11 U.S.C. § 1168 which does not provide for the court or the trustee to act with discretion, but rather articulates a right which can be exercised by secured creditors, unless the trustee agrees to perform all obligations set forth in the security agreement. Discretion in exercising a right is vested in the creditor which under the Code cannot be compelled to consider the public interest. Therefore, it would have been superfluous to apply 11 U.S.C. § 1165 to section 1168 which empowers a creditor to act.*

## V

The plaintiff's expansive reading of the word "concerning" would severely complicate the orderly progress of cases under Chapters 7 and 11 of the Code. The court would have to determine which cases con-

---

* Exemplary of plaintiffs' sophistry is their argument that since 11 U.S.C. § 1168 "refers to the commencement of a case under this *chapter* —not *sub*chapter" it implies general applicability. An involuntary case may be commenced only under Chapter 7 or Chapter 11 of this title, 11 U.S.C. § 303(a); therefore any other language in the subchapters' provisions would be ineffective. Cf. *In re BBT*, 11 Br. 224 at fn. 4 (Bkrtcy.D.Nev., 1981).

cerned "stock brokers", "commodity brokers", or "railroads" whenever such entities were allegedly effected by a case commenced under Chapters 7 or 11. This is similar to a jurisdictional fact question. *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Post-filing determination of which subchapter a case should proceed under must properly be brought by motion and only after a hearing on the merits. This court will not elect to apply only "certain provisions" in a subchapter of the Code which has a limited applicability, whenever it is alleged that the object class is being affected.

This court therefore concludes that 11 U.S.C. § 1168 is applicable only to cases proceeding under Subchapter IV of Chapter 11. After a hearing, Funding Systems Railcars, Inc., the debtor, does not come within the definition of "railroad" under 11 U.S.C. § 101(33). The court therefore must proceed to determine whether adequate protection has been provided to the secured creditor pursuant to 11 U.S.C. § 362.

Counsel for debtor will prepare an order containing findings of fact and conclusions of law consistent with this opinion within five days.