**CITIBANK, N.A., Plaintiff,**
v.
**PARK–KENILWORTH INDUSTRIES,
INC. and Philip F. Ignarski,
Defendants.**

**No. 89 C 5280.**

United States District Court,
N.D. Illinois, E.D.

Nov. 14, 1989.

Gus A. Paloian, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for Thomas E. Raleigh.

Ronald DeKoven, Jonathan Greenblatt, Shearman & Sterling, for Citibank, N.A. and also by James A. Cherney, Latham & Watkins, Chicago, Ill.

Thomas D. Rosenwein, Chicago, Ill., for Park–Kenilworth Industries, Inc.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Citibank, N.A. ("Citibank") brought this diversity action against Park–Kenilworth Industries, Inc. ("PKI") and its former secretary, Philip F. Ignarski. Citibank seeks to recover $50 million worth of Park–Kenilworth stock which was pledged to Citibank as security for a loan but which had previously been pledged to Beverly Bank, which is not a party to this action. In the alternative, Citibank seeks to recover $50 million in damages. William J. Stoecker is the sole shareholder of PKI, and is currently the subject of an involuntary Chapter 11 bankruptcy proceeding in which Citibank, among others, has filed a claim. Before the court is the motion of Thomas E. Raleigh, the trustee for Stoecker's bankruptcy estate, ("Trustee" or "Bankruptcy Trustee") to intervene pursuant to Federal Rules of Civil Procedure 24(a) and (b), and to transfer this action to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and Local Rule 2.33(a). PKI also moves for a transfer to the bankruptcy court. Citibank opposes both the motion to intervene and the motions to transfer. For the following reasons, the Trustee's motion to intervene is granted, and the Trustee's and PKI's motions to transfer are granted.

### I. BACKGROUND

On February 21, 1989, an involuntary bankruptcy proceeding was begun against William J. Stoecker in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in an action captioned *In re William J. Stoecker*, case number 89 B 02873. At the time the proceeding was commenced, Stoecker was the sole shareholder of PKI. In March of 1989, pursuant to 11 U.S.C. § 1104, Bankruptcy Judge Squires ordered the appointment of a bankruptcy trustee. Thomas E. Raleigh was later appointed to this position.

On May 11, 1989, Beverly Bank filed an adversary complaint in the bankruptcy court against ten defendants, including Citibank, PKI, and the Trustee. Beverly Bank claimed that it had a prior perfected security interest in the shares of PKI, which were pledged to it in October, 1987. Beverly Bank also alleged that Stoecker subsequently pledged the same stock ten months later to Citibank, and sought a declaratory judgment that its security interest in PKI was a first lien with priority

over all other claims. On June 12, 1989 Citibank answered Beverly's bankruptcy complaint and filed a cross-claim against the Trustee in which it asked the bankruptcy court to impose a constructive trust for Citibank's benefit on either the estate's interest in the stock or the stock itself. The Trustee answered Beverly Bank's complaint and counterclaimed against both Beverly Bank and Citibank on June 29, 1989. On August 15, 1989, Citibank filed a "proof of claim" in the bankruptcy court, asserting claims against Stoecker for fraud, negligent misrepresentation, negligence and breach of contract in connection with the pledge of stock.

On July 3, 1989, Citibank filed this action against PKI and Philip F. Ignarski, one of PKI's former officers. Citibank did not name the Trustee, Beverly Bank, or any other creditor as a defendant. The six-count complaint alleges violations of the Illinois Uniform Commercial Code by PKI, negligence by PKI, and common-law fraud on the part of PKI and Ignarski. Essentially, Citibank contends that PKI and Ignarski induced Citibank to increase the amount of a loan to PKI and to extend its due date by falsely representing that PKI's shares were free of any encumbrances, so that Citibank accepted a pledge of PKI stock. In fact, Citibank alleges, the shares had previously been pledged to Beverly Bank. In its complaint, Citibank asks for, *inter alia,* the following relief: An order compelling PKI to acquire the stock in question from Beverly Bank and to transfer it to Citibank; judgment against PKI in excess of $50 million; punitive damages against PKI; judgment against Ignarski, in excess of $50 million; and punitive damages against Ignarski.

The Trustee seeks to intervene in this suit, alleging that, as bankruptcy trustee, he has an interest in the assets of Stoecker's estate, and that the stock in question makes up the major portion of the estate. The trustee seeks either intervention as of right, under Federal Rule of Civil Procedure 24(a), or permissive intervention, under Rule 24(b). In addition, both the Trustee and PKI seek to refer and transfer this action to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and Local Rule 2.33(a). These parties allege that this action must be transferred to the bankruptcy court under both these provisions because it arises from, or is related to, an existing Title 11 proceeding. In opposition to these motions, Citibank asserts that the Trustee does not have a sufficient interest in this suit to intervene; that the bankruptcy court has no jurisdiction over this claim; and that it is entitled to a jury trial, over which the bankruptcy court has no power to preside. We find that the Trustee has a right to intervene under Rules 24(a) and (b), and that this case must be transferred to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and Local Rule 2.33(a).

## II. INTERVENTION

■ The Bankruptcy Trustee initially seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), which provides for intervention as of right where the applicant has an interest in the property or transaction which is the subject of the suit and "the disposition of the action may as a practical matter impair or impede the applicant's ability to protect" his interest, "unless the applicant's interest is adequately represented by existing parties." Fed.R. Civ.P. 24(a)(2). The stock at issue in this suit is estate property, so the Trustee has an interest in this suit by virtue of his duty under the Bankruptcy Code to "be accountable for all property received" in the bankruptcy estate. 11 U.S.C. § 704(2) (1988); *see* 11 U.S.C. § 323 (1979) and 11 U.S.C. § 1106 (1988).

Citibank asserts that the Trustee does not have a cognizable interest in this action sufficient to allow him to intervene as of right. Citibank relies on *Rigco v. Rauscher Pierce Refsnes, Inc.,* 110 F.R.D. 180 (N.D.Tex.1986), which held that the sole shareholders of a debtor corporation could not intervene in the debtor's lawsuit against a third party. *Rigco,* however, does not support Citibank's contention that the Trustee cannot intervene in this suit. In *Rigco* the shareholders argued that they had an interest in the debtor's suit because they were responsible to the bankruptcy

claimants for any deficiency in the bankruptcy estate. Because any recovery by the debtor corporation in its suit would belong to the bankruptcy estate and reduce the shareholder's liability for the deficiency, they argued that they had an interest in ensuring that the corporation secured the largest possible recovery. 110 F.R.D. at 183. The court characterized this interest as a "purely economic" one which was insufficient to justify intervention under Rule 24(a)(2). *Id.* at 184.

The key to the *Rigco* holding, however, does not lie in the court's use of the indefinite term "economic interest" to describe an insufficient interest under Rule 24(a)(2). The court also stated that for an interest to be sufficient under Rule 24(a)(2) it had to be a "direct and substantial interest in the proceedings." 110 F.R.D. at 183. In *Rigco* the shareholders' interest was indirect because the shareholders had no direct interest in the subject matter of the suit; they rather had a general interest in seeing the debtor corporation recover a large sum of money, which would reduce their own liability in the bankruptcy proceeding. In this case, the Trustee has a direct interest in the subject matter of the suit. As noted above, the Trustee has a statutory duty to protect the assets of the estate, and the PKI shares are a major estate asset. This suit directly concerns the shares themselves. In fact, the suit seeks to establish the ownership of the stock — Citibank contends that it should recover either the stock or its value because it has the primary security interest in the stock. If one of Citibank's prayers for relief in this case were to be granted and Citibank were to be awarded the PKI stock, one of the most valuable assets of the bankruptcy estate would be lost. The trustee has an interest in preventing this loss because he has a statutory duty to protect the assets of the estate. Rather than having a general shareholder's interest in the value of a company's stock, as Citibank contends, the Trustee has a direct interest in the property that is the subject of this suit.

■ Citibank also contends that the Trustee has failed to demonstrate that PKI, as a defendant in this suit, will not adequately represent the Trustee's interest, as required by Rule 24(a). An intervenor must satisfy the burden of showing that he possesses a sufficiently different interest from the litigant in order to intervene. *Hoots v. Commonwealth of Pennsylvania*, 672 F.2d 1133, 1135 (7th Cir. 1985). Here, however, the Trustee has met this burden. The interests of the Bankruptcy Trustee and PKI are different enough so that the Trustee cannot rely on PKI to protect his interest. The complaint in this case accuses PKI and Ignarski of fraud but also makes substantial allegations of fraud about the bankrupt, Stoecker. Plaintiff's Complaint at 4, 6, 7. It is certainly foreseeable that these three parties will point fingers at each other. In addition, PKI has the incentive to avoid liability, but is not necessarily dedicated to preserving the stock specifically for the bankruptcy estate, as is the Trustee. In fact, PKI and Ignarski have more incentive to avoid possible monetary and punitive damages against themselves than they have incentive to prevent Citibank's acquisition of the stock. Further, as this matter is explored, the estate and PKI may decide that they have claims against each other. The interests of the Trustee and PKI are sufficiently different to justify the conclusion that PKI would not adequately represent the Trustee's interest in this action. We therefore hold that the Trustee has the right under Rule 24(a) to intervene in this action.

■ The Trustee also asserts that he should be allowed to permissively intervene under Rule 24(b). Even if the Trustee did not satisfy the requirements for intervention as of right, this court would allow him to permissively intervene under Rule 24(b). Rule 24(b)(2) gives a court the discretion to allow intervention when the relevant claims or defenses of the parties involve a common question of law or fact. Fed.R.Civ.P. 24(b)(2). In this case, the defenses of PKI and the Trustee would involve common questions of law and fact concerning Citibank's alleged ownership of the stock. Both parties seek to establish that Citibank

does not have ownership of the stock, albeit for somewhat different reasons.

We also consider, pursuant to Rule 24(b), whether "intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R. Civ.P. 24(b). We find that intervention will not cause material delay or prejudice. The Trustee seeks to transfer this case back to the bankruptcy court, which may actually speed its resolution. Even if the case were to stay in this court, the Trustee does not seek to introduce any tangential or potentially confusing issues, but only wants to establish ownership of the stock, as do the present parties. We have held that the Trustee can intervene as of right under Rule 24(a), but note that we would allow the Trustee to permissively intervene under Rule 24(b) even if intervention as of right were not appropriate. The Trustee's motion to intervene is granted pursuant to Rule 24(a).

### III. MOTIONS TO TRANSFER

A. Bankruptcy Court's Jurisdiction

The Trustee and PKI both move to transfer this action pursuant to 11 U.S.C. § 157(a) and Local Rule 2.33(a). 28 U.S.C. § 157(a) provides that "each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a) (1988). Local Rule 2.33(a) provides: "Pursuant to 28 U.S.C. 157(a), any and all cases under Title 11 U.S.C. and any and all proceedings arising under Title 11 U.S.C. or arising in or related to any case under Title 11 U.S.C. are referred to the bankruptcy judges of this District." N.D.Ill. Rule 2.33(a). Citibank does not challenge the applicability of these provisions, and they certainly must apply, because the same basic claims presented in this suit were asserted in the bankruptcy court. The language of both the code provision and the rule are mandatory, and we would decline to transfer this case only if we found that the bankruptcy court had no jurisdiction over this claim.

Not surprisingly, Citibank's next argument is that the bankruptcy court has no jurisdiction over this claim. Bankruptcy courts have subject matter jurisdiction over all "core" bankruptcy proceedings and certain "non-core" proceedings. 28 U.S.C. § 157(b), (c) (1988). The Bankruptcy Code provides a non-exclusive list of "core proceedings," which are matters directly related to the administration of the bankruptcy estate. 28 U.S.C. § 157(b)(2). Bankruptcy counts have jurisdiction over "non-core proceedings" if they are "otherwise related" to a bankruptcy case. 28 U.S.C. § 157(c)(1). In such cases, however, the bankruptcy judge submits fact findings and legal conclusions to the District Court, which engages in a *de novo* review of any matters to which there has been an objection. The bankruptcy court would have jurisdiction over Citibank's claim because, if heard there, the claim wold be a core proceeding.

In its brief Citibank proceeds on the assumption that its claim would be a non-core proceeding in the bankruptcy court. The claim, however, is one of the types of claims considered to be core proceedings under Section 157(b)(2). The list of matters that are core proceedings includes "determinations of the validity, extent, or priority of liens" on estate property. 28 U.S.C. § 157(b)(2)(K). Citibank's claim falls directly within this definition. First, the stock in question, which was owned by the bankrupt Stoecker, is estate property. Citibank has not disputed this fact. While courts will call something a non-core proceeding when the bankruptcy trustee disclaims all interest in the property, *see In re Denalco Corp.*, 57 B.R. 392 (N.D.Ill.1986), such is not the case here. The Trustee has not disclaimed the estate's interest in the stock. Answer and counterclaim of Trustee to Adversary Complaint of Beverly Bank at 4, attached as Exhibit C to Trustee's Motion to Intervene. At the very least, the Trustee asserts an interest in the proceeds of the stock after the secured loans have been repaid. Plaintiff's Memo

in Opposition to Motions to Intervene and Transfer at 2.

Secondly, Citibank's suit falls under Section 157(b)(2)(K) because it is seeking to determine the "validity, extent, or priority" of its lien on the Stoecker stock. The purpose of Citibank's suit is clear from its first prayer for relief, in which it requests a judgment directing Park–Kenilworth to acquire the shares of stock from Beverly Bank and to transfer them to Citibank. Citibank bases this request, of course, on its contention that Stoecker's pledge of the stock to Citibank gave it a lien on the stock, with priority over all creditors, including Beverly Bank. While Citibank in its complaint alleges negligence, common-law fraud, and violations of the Illinois Uniform Commercial Code, its purported grounds for recovery do not change the nature of its action. Neither does the fact that Citibank asks for damages as well as a transfer of the stock make this a non-core proceeding.

In its negligence and fraud counts, Citibank asks for approximately $50 million in damages rather than for a return of the stock. Nonetheless, the prayers for relief in these counts, along with the request for a transfer of the stock, are all based upon the same transaction — Citibank's loan to Park–Kenilworth, secured by a transfer of $50 million of Park–Kenilworth stock. Citibank contends that it would not have loaned Park–Kenilworth the money if it had known that it was receiving as security stock which had been previously pledged. This contention underlies all of its claims. Citibank's suit is a proceeding to determine the "validity, extent, or priority" of the various liens on the stock. As such it is a core proceeding, under 28 U.S.C. § 157(b)(2)(K), over which the bankruptcy court has jurisdiction.

The above analysis dealt with the types of cases which bankruptcy court are authorized to hear. Rather than fully addressing this important issue, Citibank focuses on cases dealing with a bankruptcy court's jurisdiction over certain types of property. Citibank relies extensively on cases which hold that a bankruptcy court does not have jurisdiction over certain *property* because the property is not part of the bankruptcy estate. Such cases are inapplicable here because the property in question here, the shares of stock, are unquestionably estate property.

One case relied upon by Citibank is *Matter of Pentell*, 777 F.2d 1281 (7th Cir.1985), which held that a bankruptcy court had no jurisdiction over insurance proceeds belonging to a partnership where the bankruptcy proceeding involved only one of the partners. The court based its holding on the fact that, in terms of jurisdiction over property, the bankruptcy court can only exercise control over items which belonged to the bankrupt. In *Pentell* the bankruptcy court did not have jurisdiction over the insurance proceeds because they were partnership property, and the court only had jurisdiction over the property of the individual partner. 777 F.2d at 1285. A key to the court's holding was the fact that the individual partner did not have an individual interest in partnership property. *Id.* In this case, the bankruptcy court has jurisdiction over the property in question because, as all parties agree, Stoecker has an undivided interest in the stock, though it may be subject to liens.

Citibank cites several other cases in support of its contention that the bankruptcy court has no jurisdiction over this claim, all of which are similarly inapplicable, most because they concerned property which was not part of the bankruptcy estate.[1]

1. *See In re Beck Industries, Inc.*, 479 F.2d 410 (7th Cir.1973) (Assets of debtor corporation's subsidiary are not assets of bankruptcy estate; state court suit against subsidiary had effect on value, but not ownership, of subsidiary's stock); *Funding Systems Railcars v. Pullman Standard, Inc.*, 34 B.R. 706 (N.D.Ill.1983) (Bankruptcy Court has no jurisdiction to enjoin breach of contract suit against subsidiary of debtor); *In re*

*Hartley*, 39 B.R. 281 (Bkrtcy.N.D.Ohio, 1984) (Bankruptcy court *has* jurisdiction to determine priority of liens on shares of stock owned originally by debtor; court will not abstain from hearing case in favor of state court tort suit alleging fraudulent deprivation of state court plaintiff's ownership of stock); *Matter of Kubly*, 818 F.2d 643 (7th Cir.1987) (Bankruptcy Court has no jurisdiction over dispute between poten-

This suit directly involves estate property. While Citibank claims that "[t]he estate's ultimate ownership of the PKI stock is uncontested in this proceeding ...," Plaintiff's Memorandum in Opposition to Motions to Refer and Transfer at 15, this assertion is simply not true. If Citibank were to be awarded the shares of PKI stock, as requested in its first prayer for relief, obviously the estate would no longer own them, nor could any other creditor claim them. In any event, Citibank's entire suit, including the claim for damages, is based on its contention that PKI pledged the stock to Citibank, so the suit concerns estate property. The bankruptcy court thus has jurisdiction over the property at issue in this suit.

The central issue in this case is really whether Citibank's claim would be a core proceeding if heard in the bankruptcy court. As noted above, it would be a core proceeding, over which the bankruptcy court would have jurisdiction. A transfer is thus appropriate pursuant to 11 U.S.C. § 157(a) and Local Rule 2.33(a) because this suit is related to a bankruptcy proceeding which is now pending.

B. Seventh Amendment Right to Jury Trial

 Citibank's final argument is that it is entitled to a jury trial on its claim and that, because bankruptcy courts cannot hold jury trials without the parties' consent, that transferring this case to the bankruptcy court would violate the Seventh Amendment, which guarantees litigants a right to a jury trial in suits at common law. Though we have found that Citibank's claim would be a core proceeding if heard in the bankruptcy court, this determination does not necessarily mean that Citibank has no right to a jury trial. This much is clear from the Supreme Court's recent decision in *Granfinanciera, S.A. v. Nordberg*, — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), in which the Court found that the right to a jury trial existed in an action by

a bankruptcy trustee to recover a fraudulent conveyance, though this type of action is considered a core proceeding under the Bankruptcy Code. In ruling on this motion to transfer, however, we do not need to decide whether Citibank has the right to a jury trial on its claim, because we find that bankruptcy courts do have the power to conduct jury trials in core proceedings, even without the parties' consent. After this case is transferred, the bankruptcy court can decide whether the right to a jury trial exists; if it does, the court is authorized to conduct its own jury trial, so that Citibank would not be deprived of its rights under the Seventh Amendment.

Nearly all courts considering the issue have found that jury trials are inappropriate in bankruptcy courts for non-core proceedings. Some courts have reached this conclusion based on a finding that bankruptcy courts do not have the power to conduct jury trials in non-core proceedings without the parties' consent. *In re American Community Services, Inc.*, 86 B.R. 681, 686 (D.Utah 1988); *Pied Piper Casuals v. Ins. Co. of State of Pa.*, 72 B.R. 156, 159–60 (S.D.N.Y.1987). Others have held that, while the power to conduct jury trials may exist in non-core proceedings, for efficiency reasons it should not be exercised without the parties' consent. These courts have noted that conducting a jury trial in a non-core proceeding would be a tremendous waste of time and resources because the jury's fact findings would be subject to a *de novo* review in the district court. *See In re Smith–Douglass, Inc.*, 43 B.R. 616, 618 (Bkrtcy.E.D.N.C.1984); *In re Towner Petroleum Co.*, 48 B.R. 182, 190 n. 13 (Bkrtcy.W.D.Okl.1985).

The above practical limitation on conducting jury trials does not exist for core proceedings, because for these matters the jury's findings would be subject to an ordinary review by the district court, rather than a *de novo* review. For core proceedings, then, the important question is whether bankruptcy courts have the power to conduct jury trials in these matters. We

tial creditors over proceeds from sale of debtors' assets; neither debtors nor bankruptcy trustee

claimed interest in proceeds.)

are aware of no circuit court which has ruled on this issue. Several district courts and bankruptcy courts have ruled on the issue and, while there is a split in authority, a clear majority of these courts have found that bankruptcy courts have the power to conduct jury trials in core proceedings. *Dailey v. First Peoples Bank of New Jersey*, 76 B.R. 963 (D.N.J.1987); *In re McCormick*, 67 B.R. 838 (D.Nev.1986); *M & E Contractors v. Kugler–Morris General Contractors, Inc.*, 67 B.R. 260 (N.D. Tex.1986); *In re Gaildeen Industries, Inc.*, 59 B.R. 402 (N.D.Cal.1986); *In re Data Compass Corp.*, 92 B.R. 575 (Bkrtcy.E.D. N.Y.1988); *In re Blackman*, 55 B.R. 437 (Bkrtcy.D.D.C.1985); *In re Smith–Douglass*, 43 B.R. 616 (Bkrtcy.E.D.N.C.1984). *But Cf. In re Proehl*, 36 B.R. 86 (W.D.Va. 1984); *In re Brown*, 56 B.R. 487 (Bkrtcy.D. Md.1985); *In re American Energy*, 50 B.R. 175 (Bkrtcy.D.N.D.1985).

We are in agreement with the courts above which held that bankruptcy courts have the statutory and constitutional authority to conduct jury trials. While the various bankruptcy statutes have not been crystal clear on the issue, a review of these statutes leaves the firm impression that Congress intended for bankruptcy courts to conduct jury trials, at least in core proceedings. Congress was silent on the issue of jury trials in bankruptcy courts until the Bankruptcy Reform Act of 1978. ("1978 Act"). That statute provided that "this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11...." 28 U.S.C. § 1480. This provision was generally interpreted as giving bankruptcy courts the power to conduct jury trials. *See In re Gaildeen Industries, Inc.*, 59 B.R. 402, 404 (N.D.Cal.1986). The power of bankruptcy courts to conduct jury trials, however, was called into question by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.E.2d 598 (1982), which is discussed below. As a result of the *Marathon* decision, the Judicial Conference promulgated the Emergency Rules of Bankruptcy Procedure, which prohibited bankruptcy courts from conducting jury trials.

Most of the Emergency Rules became part of the Bankruptcy Code with the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act"), which in large part merely ratified the Emergency Rules. The Emergency Rules' prohibition of jury trials was one of the few provisions which was not enacted as part of the 1984 Act. We agree with several other courts that Congress' failure to make this prohibition part of the 1984 Act is evidence that Congress intended to allow bankruptcy courts to conduct jury trials. *See Dailey v. First Peoples Bank of New Jersey*, 76 B.R. 963, 967 (D.N.J. 1987); *In re McCormick*, 67 B.R. 838, 842 (D.Nev.1986); *In re Gaildeen Industries*, 59 B.R. 402, 405 (N.D.Cal.1986). If Congress had intended to deny bankruptcy courts the right to jury trials, it could have easily done so by enacting the relevant emergency rule. *See Dailey*, 76 B.R. at 967.

The broad grant of power given to bankruptcy courts in Title 28, Section 157(b), enacted as part of the 1984 Act, also suggests that they have the statutory authority to conduct jury trials. Section 157(b) authorizes bankruptcy courts to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" that are referred by the district court. 28 U.S.C. § 157(b). In addition, Section 157(b) allows the bankruptcy court to enter final orders and judgments in all core proceedings. As the *Gaildeen* court noted, "this broad grant of jurisdiction would seem to include those cases in which a right to a jury trial exists." 59 B.R. at 406; *See also Dailey*, 76 B.R. at 967–68; *McCormick*, 67 B.R. at 841–42. We find that Congress has authorized bankruptcy courts to conduct jury trials in core procedings.

Having determined that bankruptcy courts have statutory authority to conduct jury trials, we must next determine if their exercise of this authority would be constitutional. The main rationale behind the decisions of those courts holding that bank-

ruptcy courts cannot conduct jury trials is that this exercise of power is unconstitutional under the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon* held the Bankruptcy Reform Act of 1978, which had authorized bankruptcy courts to conduct jury trials, unconstitutional. The Court noted that "bankruptcy courts exercise all ordinary powers of district courts, including the power to preside over jury trials...." 458 U.S. at 85, 102 S.Ct. at 2879. The court then held that the Act was unconstitutional because it removed "most, if not all, of the 'essential attributes of the judicial power' from the Art. III district court," and placed those attributes in a non-Article III adjunct. 458 U.S. at 87, 102 S.Ct. at 2880.

Courts finding that bankruptcy courts cannot conduct jury trials have taken *Marathon* to mean that a bankruptcy court's conducting of a jury trial would violate the Constitution. *In re Proehl,* 36 B.R. 86, 87 (W.D.Va.1984); *In re Brown,* 56 B.R. 487, 490 (Bkrtcy.D.Md.1984); *In re American Energy, Inc.,* 50 B.R. 175, 181 (Bkrtcy.D.N.D.1985). We, however, agree with the many other courts which have interpreted *Marathon* differently. When the *Marathon* court noted that bankruptcy courts have the power to conduct jury trials, it did so while listing several powers of bankruptcy courts which together made them very similar to district courts. 458 U.S. at 85, 102 S.Ct. at 2878–79. The holding of *Marathon* was not that authorizing bankruptcy courts to conduct jury trials was itself unconstitutional; rather, the Supreme Court found that all the powers of the bankruptcy court, taken together, constituted an impermissible delegation of judicial power to a non-Article III court. *Id.* at 87, 102 S.Ct. at 2880; *See Gaildeen,* 59 B.R. at 406–07; *Dailey,* 76 B.R. at 967–68; *McCormick,* 67 B.R. at 840; *M & E Contractors v. Kugler–Morris General Contractors,* 67 B.R. 260, 266. We do not interpret *Marathon* as holding that bankruptcy courts cannot constitutionally conduct a jury trial.

We have found that the bankruptcy court's power to conduct jury trials in core proceedings is not barred by the Constitution as interpreted in *Marathon.* Nor do not find any other constitutional bar to the exercise of this power, which in fact is consistent with the authority historically and presently exercised by non-Article III judges. *See McCormick,* 67 B.R. at 840; *M & E Contractors,* 67 B.R. at 266. In the event that the bankruptcy court decides that Citibank is entitled to a jury trial on its claim, that court may conduct such a trial. Transfer of this case to the bankruptcy court thus cannot violate Citibank's Seventh Amendment right to a trial by jury, if such a right exists in this case.

## IV. CONCLUSION

For the above reasons, the Bankruptcy Trustee's motion to intervene pursuant to Rule 24(a) is granted. The motions of the Trustee and Park–Industries, Inc. to transfer this action pursuant to 28 U.S.C. § 157(a) and Local Rule 2.33(a) are granted. The court orders that this action be transferred to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, to be consolidated with the action now pending there captioned *In re William J. Stoecker,* case number 89 B 02873.