In re GRABILL CORP., Camdon Companies Inc., Foxxford Group, Ltd., the Techna Group, Ltd., Windsor–Hamilton, Ltd., Debtors.

Jay A. STEINBERG, Plan Trustee for Grabill Corp., and Windsor–Hamilton, Ltd., Plaintiffs,

v.

NCNB NATIONAL BANK OF NORTH CAROLINA, Defendant.

No. 90 C 6807.

Bankruptcy Nos. 89 B 1639, 89 B 1640, 89 B 1641, 89 B 1642 and 89 B 1643.

Adv. No. 90 A 0799.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1991.

On Certification for Interlocutory Appeal Sept. 18, 1991.

---

Glen H. Kanwit, Matthew J. Botica, John F. Zabriskie, Hoplins & Sutter, Chicago, Ill., for plaintiffs.

Robert D. Dearborn, Hayden J. Silver, III, Margaret Ann Behringer Maloney, Moore & Van Allen, Charlotte, N.C., Edward T. Joyce, Raymond A. Fylstra, Joyce and Kubasiak, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

This matter is before the court on defendant National Bank of North Carolina's ("NCNB") petition for a withdrawal of reference. For the reasons explained below, the defendant's petition is denied.

### Background

The facts of this case are as follows. Prior to January 31, 1989, William Stoecker ("Stoecker") was the sole shareholder of Grabill Corporation ("Grabill"), a holding company which owned all the stock of Windsor–Hamilton, Limited ("Windsor"). Windsor was also a holding company which owned several subsidiaries. Stoecker was a director and officer of both Grabill and Windsor.

On November 25, 1986, NCNB extended a $20 million line of credit to Windsor. NCNB later increased the line of credit to $25 million. As security NCNB received Stoecker's personal guarantee, as well as the guarantee's of Windsor's subsidiaries. Windsor partially repaid its debt on May 6, 1988, by transferring $13,166,250 to NCNB (described as "the preference" in the Trustee's brief). In addition between February 9, and May 5, 1988, Grabill transferred a total of $7,890,047 (described as the "fraudulent transfers in the Trustee's brief) of Grabill's funds to NCNB on behalf of Windsor.

On January 31, 1989, certain creditors filed involuntary Chapter 7 petitions against Grabill and Windsor, which were later converted to Chapter 11 cases. Steinberg was appointed Trustee of Grabill and Windsor on February 3, 1989. On July 9, 1990, the bankruptcy court confirmed a Plan of Liquidation for Grabill and Wind-

sor, pursuant to which Steinberg was named Plan Trustee. Steinberg, as Plan Trustee, demanded that NCNB repay the full amounts of the "preference" and "fraudulent transfers", and NCNB refused. On October 5, 1990, Steinberg filed suit in bankruptcy court against NCNB to recover the alleged preferential transfers by Grabill and Windsor, which total $21,067,297.00.

NCNB subsequently filed the pending petition for a withdrawal of reference. The claims involved in this case are "core" proceedings under 28 U.S.C. § 157(b)(2)(F) and (H), and therefore normally fall within the jurisdiction of the bankruptcy courts. NCNB has demanded a jury trial in this proceeding, and is entitled to a jury trial under the Seventh Amendment because the preference and fraudulent transfer actions involve the adjudication of legal rights. *See, Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2790–91, 2802, 106 L.Ed.2d 26 (1989).[1] The sole issue presented in defendant's petition is whether the bankruptcy court has the constitutional and statutory power to conduct a jury trial in this core proceeding.

During the pendency of this motion, this case has progressed before Judge Squires of the bankruptcy court. The parties have begun discovery, and have submitted a Joint Pretrial Statement to Judge Squires. The Judge has set the case for trial by jury on November 4, 1991.

## Discussion

This discussion begins with a brief look at recent bankruptcy statutes. In 1978 Congress enacted the Bankruptcy Reform Act, Pub.L. 95–598, 92 Stat. 2549 (1978), which gave the bankruptcy court "jurisdiction over all proceedings arising under or arising in or related to cases arising under title 11." *Northern Pipeline Const. Co. v.*

*Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Act overhauled the bankruptcy system and introduced sweeping substantive and procedural reforms within the bankruptcy courts. The bankruptcy court's broad exercise of jurisdiction impacted on federal district courts as well. *Id.*

These reforms were at issue in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon* the Supreme Court held that the Bankruptcy Reform Act of 1978 was unconstitutional because it authorized Article I bankruptcy judges to exercise powers vested solely in Article III courts. In response to the *Marathon* ruling, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAJFA").

Under BAFJA the powers of the bankruptcy courts are more limited. Only district courts may exercise original bankruptcy jurisdiction, although they may refer this jurisdiction to bankruptcy courts which, in turn, act as units of the district court. 28 U.S.C. § 157(a). In this district all cases arising under Title 11 of the United States Bankruptcy Code, 11 U.S.C. 101 *et seq.,* are automatically referred to a bankruptcy judge under General Rule 2.33. Nonetheless, since the district court retains jurisdiction over the action, under BAFJA it may withdraw the reference on its own motion, or on the timely motion of any party for cause shown. 28 U.S.C. § 157.

In the instant case, the defendant has moved for a withdrawal of the reference on the grounds that the bankruptcy court is barred from conducting jury trials. This issue has been greatly contested within the courts. The Supreme Court declined to resolve this issue in *Granfinanciera,* 109 S.Ct. at 2794, and the circuits are split on the issue of a bankruptcy judge's power to

---

**1.** In *Granfinanciera* the Supreme Court found that there is a right to a jury trial on fraudulent transfer claims, since such actions were historically brought in courts of law before juries. *Granfinanciera,* 109 S.Ct. at 2790–2794. The Court reached this result by relying in part on the law of preferential transfers, indicating that the same result applies to claims involving pref-

erential transfers. Under the Bankruptcy Act of 1984 Congress placed both fraudulent transfers and preferential transfers within the jurisdiction of the bankruptcy court. *See* 28 U.S.C. § 157(b)(2) (bankruptcy court may "hear and determine" fraudulent and preferential transfer actions).

conduct a jury trial. *Compare, In the Matter of United Missouri Bank*, 901 F.2d 1449 (8th Cir.1990) *and In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990) (no power exists) *with In re Ben Cooper*, 896 F.2d 1394 (2d Cir.1990) (power exists), *cert. granted,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The Seventh Circuit has never addressed this issue. District courts in this circuit which have considered the issue are also split. *Compare, In re Grabill Corp.*, 132 B.R. 725 (N.D.Ill.1991) (no power exists), *with In re Stoecker*, 117 B.R. 342 (N.D.Ill.1990) and *Citibank v. Park–Kenilworth Industries, Inc.*, 109 B.R. 321 (N.D.Ill.1989) (power exists).[2] After reviewing the parties arguments, and the relevant case law, this court finds that bankruptcy courts possess both the statutory and the constitutional authority to conduct jury trials.

■ The court first considers the defendant's arguments in support of the petition for withdrawal. The defendant argues that bankruptcy courts lack the statutory authority to conduct jury trials, since there is neither an express or an implied statutory provision granting such authority in BAFJA. NCNB contrasts these facts with the specific powers Magistrate Judges have to conduct jury trials under certain circumstances. *See* 28 U.S.C. § 636(c). The court does not find the defendant's argument persuasive.

The starting point for determining whether bankruptcy judges have the statutory authority to conduct jury trials in core proceedings are Sections 151 and 157 of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), which lay out the statutory authority of the bankruptcy courts:

> Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding,....
> 28 U.S.C. § 151.

(a) Each district court may provide that any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising or related to a case under Title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under Title 11 and all court proceedings arising in a case under Title 11, referred under subsection (a) of this section and may enter appropriate orders in to judgment, subject to review under Section 158 of this Title.

28 U.S.C. §§ 157(a) and (b)(1). Section 157(b)(2) lists the "core" proceedings which the judges are authorized to "hear and determine", and actions involving preferential transfers and fraudulent conveyances are on the list. These provisions are silent on the issue of jury trials, and no other provision of the statute states whether jury trials by bankruptcy judges are authorized.

Aside from BAFJA, the Supreme Court's decision in *Granfinanciera* also has an impact on this discussion. *Granfinanciera* demanded a jury trial on a fraudulent transfer action, which was before the bankruptcy court under § 157(b)(2). *Granfinanciera* argued that he had a right to a jury trial because the fraudulent transfer claim was legal in nature, and the Supreme Court agreed. The Court then considered whether Congress could preempt jury trial rights by assigning them to a tribunal that traditionally did not conduct jury trials. The Court found that since a fraudulent transfer action involves private, common law rights, *Granfinanciera* was entitled to a jury trial on this issue, notwithstanding Congress' placement of the claim in bankruptcy court. *Id.* 109 S.Ct. at 2795–2802. The Court determined that a party to an adversary proceeding in bankruptcy court may have a Seventh amendment right to a jury trial before *some* tribunal, but specifically declined to reach the issue of whether the bankruptcy court could conduct the jury trial.[3]

---

**2.** *See also, In re Data Compass Corp.*, 92 B.R. 575 (Bkrtcy E.D.N.Y.1988); *In re Jackson*, 118 B.R. 243 (E.D.Pa.1990); and *In re Lee Way Holding Co.*, 115 B.R. 586 (S.D.Ohio 1990).

**3.** Nonetheless, there is language in *Granfinanciera* which suggests that the Court anticipated the possibility that the bankruptcy courts would

In *Ben Cooper* the Second Circuit Court of Appeals considered the twin mandates presented by the Bankruptcy Courts statutory power to "hear and determine" certain cases under §§ 151 and 157, and the Supreme Court's decision in *Granfinanciera.* The Second Circuit found that the bankruptcy court could conduct a jury trial, explaining that the authority is implicit within BAFJA:

> Our holding rests on two separate but related provisions. The first provision is 28 U.S.C. § 151 (1988), which states that "[e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding." The second provision is § 157(b), which ... gives bankruptcy judges the authority to conduct trials and issue final orders in core proceedings. *Granfinanciera* teaches that such proceedings, if legal in nature, are subject to the Seventh Amendment, but that opinion does not alter Congress' intent that they be heard by a bankruptcy court with authority to issue final orders. Construing the Bankruptcy Code to allow jury trials in the bankruptcy court is the only way to reconcile these various concerns.

Hence, the Second Circuit concluded that the only way to reconcile *Granfinanciera* with Section 157's provision allowing bankruptcy judges to preside over all core proceedings is to construe the Bankruptcy Code to allow jury trials in bankruptcy court. *Ben Cooper*, 896 F.2d at 1402. *See also, Jackson*, 118 B.R. 243 (E.D.Pa.1990) and *Stoecker*, 117 B.R. 342 (N.D.Ill.1990).[4] The Second Circuit determined that BAFJA provides the bankruptcy courts with statutory authority to conduct jury trials. This court agrees with that reasoning.[5]

The court also notes that there is some evidence that Congress intended to allow bankruptcy courts to conduct jury trials under BAFJA. After the Bankruptcy Reform Act of 1978 was determined to be unconstitutional Congress enacted the Emergency Rules of Bankruptcy Procedure. As explained by the court in *Stoecker*, "[m]ost of the emergency Rules were incorporated into BAFJA with the notable exception of this particular prohibition [against jury trials in bankruptcy court]." *Stoecker*, 117 B.R. at 347. Hence, Congress chose not to bar jury trials in the bankruptcy courts under the new Act.

■ The defendant next argues that, given the Supreme Court's ruling in *Marathon*, bankruptcy courts are constitutionally prohibited from conducting jury trials. The defendant contends that the *Marathon* Court invalidated the Bankruptcy Reform

---

hear jury trials because of their ruling. For example, the court stated:

> One cannot easily say that 'the jury would be incompatible' with bankruptcy proceedings, in view of Congress' express provision for jury trials in certain actions arising out of the bankruptcy litigation. And Justice White's claims that juries may serve usefully as checks only on the decisions of judges who enjoy life tenure overlooks the extent to which judges who are appointed for fixed terms may be beholden to Congress or executive officials, and thus ignores the potential for juries to exercise beneficial restrain on their decisions.

*Id.* 109 S.Ct. at 2801.

**4.** Similarly, in *Stoecker*, 117 B.R. 342 (N.D.Ill. 1990), the court found that:

> Section 157 grants bankruptcy judges the power to hear and determine *all* cases under Title 11, as well as *all* core proceedings arising under Title 11 or arising in cases under Title 11. This power also includes the power to enter final judgements in all core proceedings. In other words, Section 157 affects a broad, open ended grant of jurisdiction to the bankruptcy courts without any attempt to distinguish between jury and non-jury trials. Since it applies to *all* core proceedings, and since under *Granfinanciera* any core proceeding involving legal rights must comply with the Seventh Amendment, a fair reading of Section 157 would suggest that it impliedly creates authority for jury trials in bankruptcy court.

*Stoecker*, 117 B.R. at 346.

**5.** Given our agreement with the Second Circuit's holding, we specifically reject defendant's argument that the power to conduct jury trials should not be implied because there is no language in § 157 indicating that the authority to conduct jury trials "is an indispensable power necessary to carry out the authority actually conferred by this section." This court believes that such powers must be implied to give the courts' statutory authority real meaning.

Act of 1978 because the Act authorized bankruptcy judges to exercise powers solely vested in Article III judges, one of those powers being the power to conduct a jury trial. The defendant argues that the logical conclusion stemming from *Marathon* is that bankruptcy courts cannot conduct jury trials.

This argument does not comport with our reading of the relevant case law. First, we agree that the defendant's conclusion that Article III necessarily bars jury trials in bankruptcy courts is not compelled by *Marathon. See Stoecker,* 117 B.R. at 345 (N.D.Ill.1990). As was explained by the Second Circuit:

> At issue in *Marathon* was the provision of the Bankruptcy Act of 1978 which gave the bankruptcy court "jurisdiction over all 'civil proceedings which arising under ... or arising in or *related to* cases under title 11.'" In order to exercise that jurisdiction, the statute vested bankruptcy courts with "all the powers of a court of equity, law and admiralty" with only very limited exceptions. *Ben Cooper,* 896 F.2d 1394 (2nd Cir.1990), quoting *Marathon,* 458 U.S. at 54–55, 102 S.Ct. at 2862–63.

The *Marathon* Court found that the Bankruptcy Reform Act of 1978 gave bankruptcy courts such extensive powers that, "taken in total", it was clear that they exercised "all ordinary powers of district courts, including the power to preside over jury trials...." 458 U.S. at 85, 102 S.Ct. at 2878. The Supreme Court concluded that there was an improper delegation of power in light of all the responsibilities afforded to the bankruptcy courts, not merely the power to conduct a jury trial:

> ... it is equally clear that the logic of *Marathon Pipeline,* when applied to the narrow issue of jury trials, demonstrates that there is no unconstitutional delegation here. The court held that the Bankruptcy Reform Act of 1978 was an improper transfer of authority because it removed 'most if not all of the essential attributes of the judicial power from the Article III district court,' and placed it in a non-Article III adjunct. 458 U.S. at 87, 102 S.Ct. at 2880. Such an extensive

delegation is not at issue here, and so neither *Marathon Pipeline* nor the nondelegation clause bars jury trials before bankruptcy courts.

*Stoecker,* 117 B.R. at 345 (N.D.Ill.1990); *See also, Citibank,* 109 B.R. 321 (N.D.Ill. 1989). This court agrees with the above reasoning, and therefore rejects the defendant's argument.

In a related argument NCNB contends that Article III of the Constitution prohibits the bankruptcy courts, Article I courts, from conducting jury trials. Again, the court disagrees. First, as was explained above, the court finds that the *Marathon* case concerned the bankruptcy court's encroachment on a much larger expanse of the Article III court's power than the issue presented in this case. We are also persuaded by the Supreme Court's language in *Granfinanciera,* quoted in footnote 3, noting that the jury's input in cases before a non-article III judge, might help to preserve the integrity of the judicial process. This language suggests that the Court did not believe that allowing an Article I court to conduct a jury trial would violate the Constitution.

Finally, allowing a bankruptcy court to conduct a jury trial under Section 157 would be entirely consistent with Article III. Under § 157(b)(1), the bankruptcy court has the power to "hear and determine" all core proceedings. In contrast, the bankruptcy court only has the power to "hear" non-core proceedings. As the Second Circuit explained, if bankruptcy courts have the power to enter final judgments under Article III, subject to regular appellate review, without violating the Constitution, it follows that adding a jury into the process would not violate Article III either. *See Ben Cooper,* 896 F.2d at 1403 (2d Cir. 1990); *and Jackson,* 118 B.R. 243 (E.D.Pa. 1990).

■ While this point was not directly argued by the defendants, the court also notes that this holding does not violate the Seventh Amendment of the Constitution. Under the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States,

than according to the rules of the common law." U.S. Const. amend. VII. The district court's review of final orders in "core" proceedings is limited, and is analogous to the Court of Appeals review over district court decisions. 28 U.S.C. § 158 (1988). Since the jury verdict in a core proceeding is subject to the traditional standard of appellate review, such a proceeding would not violate the Seventh Amendment. *See also, Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974) (Jury trial in a non-Article III court satisfied the Seventh Amendment).

### Conclusion

For the foregoing reasons, the court finds that bankruptcy courts possess both the constitutional and the statutory power to conduct jury trials. The defendant's petition for a Withdrawal of Reference is denied.

### ORDER

### CERTIFICATION FOR INTERLOCUTORY APPEAL

Since the court has denied the motion to withdraw the reference, defendant NCNB requests that the court amend its order to certify this matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The defendant's motion is granted over plaintiff's objections.

Generally, the discretionary decision to withdraw a reference is not a reviewable final order. *In re Powelson*, 878 F.2d 976 (7th Cir.1989). Certification for interlocutory appeal is, however, warranted where a district court finds that the order "involved a controlling question of law as to which there is a substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b).

The court finds that certification is warranted in this case. First, as was noted throughout the September 6, 1991, order, the question of whether bankruptcy courts possess the constitutional and statutory authority to conduct jury trials is an issue which has been hotly contested within the courts, and the district courts in this circuit are also split on the issue. This court believes that an early determination of this issue by the Seventh Circuit would serve the interests of justice more thoroughly than resolution on appeal after trial before the bankruptcy court. *See, e.g., Stoecker*, 117 B.R. at 347 (N.D.Ill.1990) (District court certified this same issue for interlocutory appeal).

In addition, the court notes that both the complexity of the evidence and the numerous issues involved in this case are likely to require a long trial. If the defendant loses at trial, it will undoubtedly appeal on the jury issue. If the case is remanded to this court on the grounds that the bankruptcy court had no authority to conduct a jury trial, both the bankruptcy court and the parties will have needlessly expended vast amounts of time and energy on this case, and the parties will have needlessly wasted their financial resources as well. For all of these reasons, the court's September 6, 1991, order is amended, and certified for interlocutory appeal to the Seventh Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b).