CARDAMONE, Circuit Judge:
 

 Woodlawn Auto Workers Federal Credit Union (Woodlawn or Credit Union) appeals from an order of the United States District Court for the Western District of New York (Elfvin, J.), which upheld an earlier decision of the bankruptcy court. The district court ordered Woodlawn to turn over to the trustee of appellee Ronald Bradt’s
 
 *514
 
 estate in bankruptcy an insurance company’s payment for repairs made to Bradt’s automobile. Because we find that the payment by the insurance company is property of the estate in bankruptcy, we affirm.
 

 I
 

 In November 1980 Ronald Bradt purchased a 1979 automobile with funds loaned him by appellant Credit Union. Bradt pledged the purchased automobile as collateral for the loan and signed a Security Agreement that read, in pertinent part, as follows:
 

 (1) This security interest covers the Secured Property and any additions to it. It also covers replacements acquired within 10 days from the date of loan or proceeds (including insurance) from it.
 

 * * * * * *
 

 (4) I will keep insurance which you approve on the Secured Property at all times and will furnish you proof of the insurance. The insurance will cover normal risks such as fire, theft, property loss and damage. If the Secured Property includes motor vehicles, I will obtain collision insurance. My insurance policies will show your interest in the Secured Property. The insurance will provide payment up to the amount of the debt owed to you. I authorize you to make settlements with the insurance company to take any money paid by it. I will make sure that you receive ten days written notice before the insurance policies are cancelled.
 

 Nearly a year later, in September 1981 Bradt filed a petition for relief under Chapter 7 of the Bankruptcy Code. In November the automobile was involved in a traffic accident and sustained substantial property damage. Towne Lincoln-Mercury, an automobile dealership that has joined Bradt in this action, repaired the car. The bill for repairs was $4,863.76. Pursuant to the Security Agreement with Woodlawn, Bradt had insured the automobile for damages or loss, naming himself and Woodlawn as loss payees. The insurance company issued a check, which fully covered the repair bill, payable to both Bradt and Woodlawn.
 

 Bradt endorsed the carrier’s draft and brought it to the Credit Union for its endorsement. Instead of signing and returning it to Bradt so that he could pay for the repairs and obtain his automobile, Woodlawn seized the check, cashed it, and refused to release the proceeds. It proposed to use the funds to discharge the $4,936.52 balance due on Bradt’s loan. Towne Lincoln-Mercury has retained possession of the automobile pursuant to a repairman’s lien since November 1981. On January 7, 1982 appellee converted his Chapter 7 case to one under Chapter 13 of the Bankruptcy Code and commenced an action against Woodlawn for return of the proceeds of the insurance draft, which are being held in escrow by Woodlawn’s attorneys.
 

 II
 

 The Credit Union argues that its agreement with Bradt entitled it to the proceeds of the insurance draft. It points to New York’s Uniform Commercial Code § 9-306(2), which provides:
 

 a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
 

 Section 9-306(1) explains that “proceeds”
 

 includes whatever is received upon the sale, exchange, collection or other disposition .of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.
 

 N.Y.U.C.C. § 9-306(1), (2) (McKinney Supp. 1984-:.985). Woodlawn contends that, pursuant to § 9-306, its security interest in the automobile extends to the insurance draft and, further, that according to paragraphs
 
 *515
 
 3(b) and 4(c) of § 9-306, such interest is perfected.
 
 [1]
 

 The district court rejected appellant’s reading of § 9-306(1). It found that because “proceeds” must be from the “disposition of collateral,” an insurance payment for
 
 repair
 
 of collateral is not proceeds. The district court reasoned: “Disposition connotes finality of loss or alienation of property; when damaged property is repaired, however, no disposition thereof may be said to have occurred, as the loss involved is only temporary.” Memorandum and Order Civ-82-569, at 6. The district judge found that Woodlawn did not have a perfected security interest in, and therefore had no right to seize, the insurance draft.
 

 We both disagree with the district court’s view of New York law and conclude that New York law is not controlling as to the proper treatment of the insurance draft. Instead, since Bradt was involved in bankruptcy proceedings during the period relevant to this action, we look to federal law to determine whether it sheds light on the correct disposition of the insurance draft. The Bankruptcy Code, 11 U.S.C. §§ 101
 
 et seq.,
 
 makes explicit designations for the disposal of the insurance check and, therefore, making a determination based on New York commercial law is unnecessary.
 

 Ill
 

 On September 7, 1981 when Bradt filed his petition in bankruptcy, he was the legal owner of the automobile in question. “Owner” under New York law is defined as a “person, other than a lien holder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person....” N.Y.Veh. & Traf.Law § 128 (McKinney 1970). Section 541(a) of the Bankruptcy Code provides:
 

 The commencement of a case under under [sic] section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.
 

 11 U.S.C. § 541(a). The section’s scope is very broad.
 
 See
 
 4
 
 Collier on Bankruptcy
 
 ¶ 541.06 (L. King ed. 15th ed. 1984); H.R. Rep. No. 595, 95th Cong., 1st Sess. 367-68 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News05787, 5963, 6323-24. A debt- or’s legal ownership of an automobile is plainly sufficient to make that automobile property of the estate.
 

 Further, section 541(a)(6) includes as property of the estate “[proceeds, product, offspring, rents, and profits of or from property of the estate.” 11 U.S.C. § 541(a)(6). “Proceeds” in this context is far less limiting than it is as defined under the Uniform Commercial Code. Proceeds is “intended to be a broad term to encompass all proceeds of property of the estate. The conversion in form of property of the estate does not change its character as property of the estate.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6324.
 
 See
 
 4
 
 Collier on Bankruptcy, supra,
 
 ¶ 541.19, at 94. Thus, the insurance payment for repairs to an automobile that is property of the estate unquestionably is also property of the estate.
 

 
 *516
 
 Under the automatic stay provision of § 362 of the Bankruptcy Code, 11 U.S.C. § 362, which provides that filing a petition stays any act to obtain possession of estate property or to enforce a lien against it, Woodlawn was prohibited from seizing the proceeds of the insurance draft after Bradt declared bankruptcy. The Credit Union as a secured creditor was entitled to adequate protection of its interests,
 
 see
 
 11 U.S.C. § 361, but was not entitled to possession of the automobile.
 
 Cf. United States v. Whiting Pools, Inc.,
 
 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (IRS not entitled to possession of property in which it had a valid security interest and that it had seized
 
 prior
 
 to bankruptcy petition). Nor could Woodlawn seize the “proceeds” (as defined in the Bankruptcy Code) of that automobile. The Bankruptcy Code’s provisions protecting secured creditors’ rights are substitutes for possession.
 
 See id.
 
 at 2314-15.
 

 IV
 

 As it is established that the insurance draft was part of appellee’s bankruptcy estate, Woodlawn’s other arguments are readily answered. It claims that the insurance payment was not part of the estate because it was “not in existence” when Bradt filed his Chapter 7 petition, and the claim was paid before Bradt converted to Chapter 13. This argument is not persuasive because the insurance payment is not new or different property but is, as noted, “proceeds” of the automobile under 11 U.S.C. § 541(a)(6). Appellant’s final argument is that because there was a “loss payable” clause in the insurance policy, Bradt had no interest in the payment. We disagree. As the district court pointed out, the insurance draft was made payable to
 
 both
 
 Woodlawn and Bradt, making it evident that Bradt had some interest in it.
 

 Conclusion
 

 For the above reasons, we affirm the judgment of the district court.
 

 [1]
 

 . U.C.C. § 9-306(3)(b) provides:
 

 (3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless
 

 (b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds.
 

 U.C.C. § 9-306(4)(c) provides:
 

 (4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
 

 (c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings.
 

 N.Y.U.C.C. § 9-306(3)(b), (4)(c) (McKinney Supp.1984-1985).