777 F.2d 1281
 13 Bankr.Ct.Dec. 1247
 In the Matter of Christopher R. PENTELL and Nilda E.
Pentell, Debtors.
Appeal of S.J. WEINSTEIN and J.L. Kosbie.
HOPKINS ILLINOIS ELEVATOR CO., Plaintiff-Appellee,
v.
Christopher R. PENTELL, Defendant.
 No. 84-2856.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 26, 1985.
Decided Nov. 27, 1985.
 
 Paul A. Gold, Paul A. Gold, Ltd., Chicago, Ill., for appellants.
 Christopher J. Horvay, Berger, Newmark & Fenchel, Chicago, Ill., for plaintiff-appellee.
 Before ESCHBACH and FLAUM, Circuit Judges, and GIBSON, Senior Circuit Judge.*
 FLAUM, Circuit Judge.
 
 
 1
 Appellants S.J. Weinstein and J.L. Kosbie, holders of a second mortgage on a building partially owned by the debtor Christopher Pentell, appeal from the district court's affirmance of an order by the bankruptcy judge authorizing the disbursement of funds from a bank account to the appellee Hopkins Illinois Elevator Company. Weinstein and Kosbie argue that the bankruptcy judge had no jurisdiction to order disbursement of the funds and that the judge erred in concluding that, under Illinois law, Hopkins's mechanics lien had priority over Weinstein and Kosbie's second mortgage lien. We reverse and remand on the grounds that the bankruptcy court lacked jurisdiction over the funds as the record now stands.
 
 I.
 
 2
 Debtor Christopher Pentell is the general partner and owns a thirty percent interest in a partnership that is the beneficiary of a land trust holding title to a multi-story apartment building at 860 North Hinman Avenue in Evanston, Illinois. Appellants S.J. Weinstein and J.L. Kosbie are holders of a second mortgage on the property, duly recorded on September 14, 1979. In 1980, Weinstein and Kosbie filed a complaint in state court to foreclose their mortgage.
 
 
 3
 After Weinstein and Kosbie filed their mortgage foreclosure complaint, the apartment building was damaged by fire. Pentell and the limited partners in the land trust entered into a written contract with plaintiff-appellee Hopkins Illinois Elevator Company whereby Hopkins agreed to repair the fire damage to the building's elevator for $56,038. Hopkins performed the repair work and, on February 10, 1982, recorded a timely claim for a mechanics lien with the county recorder in the amount of $56,038. Hopkins was never paid for the repair work.
 
 
 4
 On May 7, 1982, Pentell filed a petition for relief under chapter 11 of the Bankruptcy code. 11 U.S.C. Secs. 1101-1174 (1982 & West Supp.1985). Weinstein and Kosbie subsequently filed an adversary complaint against Pentell in the bankruptcy court seeking to foreclose their mortgage. In May 1983, Hopkins filed a separate adversary complaint against Pentell seeking to modify and lift the automatic stay imposed by 11 U.S.C. Sec. 362 so as to permit Hopkins to recover its $56,038 in state court pursuant to the Illinois Mechanics Lien Act, Ill.Rev.Stat. ch. 82, Sec. 1 et seq. (1983).
 
 
 5
 On July 14, 1983, pursuant to an agreement between all of the parties in the Weinstein and Kosbie adversary action, the bankruptcy court ordered the monies issued by the partnership's insurance company as reimbursement for the fire damage at the apartment building, including fire damage to the elevator, deposited into a separate bank account from which funds could be withdrawn upon further order of the court.
 
 
 6
 By January 1984, the bankruptcy court still had not ruled on Hopkins's complaint to modify the automatic stay. On January 26, 1984, Hopkins moved for entry of an order allowing disbursement to Hopkins of $56,038 from the separate bank account containing the insurance proceeds. Pentell's limited partners joined in the motion as intervening petitioners, and Pentell did not oppose the motion. Weinstein and Kosbie were served with notice of the motion and, on February 13, 1984, they filed an answer opposing Hopkins's motion.
 
 
 7
 The bankruptcy court issued an order on March 16, 1984, finding that Hopkins had fulfilled all of its obligations under its contract with the partnership to repair the elevator and that the repairs constituted a permanent and valuable improvement of the premises, enhancing the value of the premises to the extent of at least $56,038. Because Hopkins's work enhanced the premises to that extent, the court held that Hopkins's lien was entitled to priority over Weinstein and Kosbie's second mortgage lien under the Illinois Mechanics Lien Act. The court therefore granted Hopkins's motion for disbursement of funds and ordered a check in the amount of $56,038 to be issued to Hopkins from the separate account. The court also dismissed, at Hopkins's request, Hopkins's May 1983 adversary complaint seeking modification of the automatic stay.
 
 
 8
 Weinstein and Kosbie appealed the bankruptcy court's order to the district court. On October 3, 1984, the district court dismissed their appeal and affirmed the order of the bankruptcy court. Weinstein and Kosbie appealed from that final order on October 26, 1984.
 
 II.
 
 9
 Weinstein and Kosbie assert three different grounds for reversing the district court's affirmance of the bankruptcy judge's order: (1) the bankruptcy judge had no jurisdiction to decide this matter because the action could and should have been brought in state court, (2) the bankruptcy judge had no jurisdiction to disburse the insurance proceeds in the separate account since the funds were not part of Pentell's estate, and (3) the bankruptcy judge should not have given Hopkins's mechanics lien priority over Weinstein and Kosbie's second mortgage lien. Since we find that the evidence that the insurance proceeds were part of the debtor's estate was inadequate, we confine our discussion to that issue alone.
 
 
 10
 Weinstein and Kosbie argue that the bankruptcy judge had no jurisdiction to grant Hopkins's motion to disburse funds from the separate bank account since the insurance proceeds were not part of Pentell's estate. Specifically appellants claim that (1) since the real estate was held in a land trust the debtor technically had no ownership interest and (2) any interest in the real estate or the insurance proceeds is held by the partnership and not any individual partner such as Pentell.[1] Although the convoluted nature of the relationships in this case makes the determination of the extent of the debtor's estate difficult, we hold that on the limited record before this court, a record devoid of information about the nature of the partnership, the bankruptcy court did not have jurisdiction over the insurance proceeds.
 
 
 11
 Weinstein and Kosbie's claim that the property at issue is owned solely by the land trust, while of suspect validity,[2] is irrelevant to this case. At issue here are the proceeds from a fire insurance policy on the apartment building, not the property itself. "It is well established that money payable as the proceeds of a fire policy taken out before bankruptcy for the debtor's benefit does not arise from property, but from a contract between insurer and insured." 4 Collier on Bankruptcy p 541.13 (L. King 15th ed. 1979). See In re Balsier, 215 Fed. 134, 135 (W.D.Pa.1914) (discussing the above principle as well established and citing Justice Story's opinion in Columbia Insurance Co. v. Lawrence, 35 U.S. 507 (10 Pet.), 9 L.Ed. 512 (1836)). The fire insurance contract was entered into by the limited partnership through its agent-general partner, Pentell. The proceeds from the policy were thus an asset of the partnership unconnected to the real property insured. See 4 Collier on Bankruptcy at p 541.12. In addition to establishing the irrelevancy of the actual legal title to the apartment building, this shows that the focus on the priority between mechanics lien holders and mortgagees is misplaced. Since the insurance proceeds are not considered to be derived from the real property neither the appellant's nor the appellee's security interest in the apartment building attached to the funds. They stand in no better position with regard to the proceeds than any other creditor of the partnership.[3]
 
 
 12
 The more important issue, and one only alluded to by the parties, is whether Pentell's relationship to the fund justified the bankruptcy court's exercise of jurisdiction over money belonging to the partnership where the partnership itself was not placed into bankruptcy. It is important to stress that this proceeding involved only the Pentells' personal estate and not the limited partnership. While as a factual matter the bankruptcy of the sole general partner may mean that the limited partnership is effectively bankrupt, partnerships are nonetheless considered separate "persons" for purposes of the Bankruptcy Code. See In re Dreske, 25 B.R. 268 (Bankr.Wisc.1982). The only "partnership property" before the court during an individual partner's bankruptcy is the partner's personal property interest in the partnership. Ill.Ann.Stat. ch. 106 1/2 Sec. 26 (Smith-Hurd 1952) (a partner's interest in the partnership is personal property). With respect to any specific asset the partner has no individual interest; each partner has a joint interest in the whole. Ill.Ann.Stat. ch. 106 1/2 Sec. 24 (Smith-Hurd 1952). See also Edwards v. Holcomb, 214 N.E.2d 512, 67 Ill.App.2d 479 (1966). In the absence of some provision in the partnership agreement, a document that was not made part of the record of this case, there can be no basis for including any particular partnership asset in the individual estate of Pentell. The debtor's thirty percent interest cannot necessarily be deemed to consist of the insurance proceeds.
 
 III.
 
 13
 It is possible that a limited partnership can be structured in such a way that the general partners are deemed to hold title to all the partnership property. 68 C.J.S. Partnership Sec. 475 (1950). On remand, should the bankruptcy court find that this particular partnership did provide Pentell with a particular ownership interest in the funds, then it can exercise jurisdiction[4] and reconsider the merits.[5] Otherwise no jurisdiction over the insurance proceeds exists. For these reasons this case is reversed and remanded to the district court with instructions to refer the case to the bankruptcy court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation
 
 
 [1]
 Weinstein and Kosbie also dispute whether Pentell has any interest at all in the limited partnership since he had pledged his thirty percent interest as security for funds advanced by the limited partners. This argument is meritless. The use of an asset as security may separate legal and equitable title but it does not strip the holder of the asset of all indicia of ownership. Thus while Pentell's partnership share may have been encumbered he was still the legal owner
 
 
 [2]
 Our decision in In the matter of Gladstone Glen, 628 F.2d 1015 (7th Cir.1980) and, more particularly, the bankruptcy court's ruling in In the matter of Langley, 30 B.R. 595 (Bankr.N.D.Ind.1983) established that in applying the "substance over form" doctrine to "Illinois-type" land trusts the beneficiaries' equitable interest in the trust made the real property part of the debtor beneficiary's estate. This is true as a matter of federal bankruptcy law regardless of how the state characterizes the actual legal ownership of the property. Gladstone Glen at 1019. (Note that Gladstone Glen was decided prior to the Bankruptcy Code's promulgation. However, the court in Langley noted that the analysis in the Seventh Circuit's opinion was equally applicable to Sec. 541 of the Bankruptcy Code, 11 U.S.C. Sec. 541 (1980), governing the scope of the debtor's estate.) Thus, were this the bankruptcy of the partnership we would have no trouble including the property in the estate. Since, however, we are only concerned with Pentell's estate the analysis would be more difficult because as a partner he has only an indivisible joint interest in specific partnership property. Ill.Ann.Stat. ch. 106 1/2 Sec. 26 (Smith-Hurd 1952)
 
 
 [3]
 The apparent harshness of this rule is softened by the fact that lien creditors can, and often do, obtain an assignment of the insurance policy or arrange to be a beneficiary of the policy. Collier at p 541.12
 
 
 [4]
 Should the bankruptcy court find that the funds were properly placed in the debtor's estate then there can be no problem under Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In Northern Pipeline a plurality of the Court held that the Constitution bars Article I bankruptcy judges from exercising jurisdiction over "all matters related to those arising under the bankruptcy laws." Id. at 76, 102 S.Ct. at 2874. The Northern District of Illinois responded to the Supreme Court's ruling in its General Order of December 20, 1982, providing that in "related proceedings" a bankruptcy judge may not enter a judgment or dispositive order, but rather must submit findings, conclusions, and a proposed judgment or order to the district judge unless the parties consent to entry of judgment by the bankruptcy judge. General Order p D(3)(b) (N.D.Ill. Dec. 20, 1982). The Order defines related proceedings as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." Id. p D(3)(a). Related proceedings do not include, inter alia, "orders to turn over property of the estate." Id. The Order further provides that a proceeding "is not a related proceeding merely because the outcome will be affected by state law." Id. If the insurance proceeds are deemed to be part of the estate then Hopkins's motion requested an order to turn over property of the estate. Since only the bankruptcy judge, as opposed to the state courts, is empowered to disburse estate funds it is impossible to view the motion as a "related proceeding." Thus if the court finds that it does in fact have jurisdiction over the fire insurance proceeds there would be no jurisdictional problem under Northern Pipeline
 
 
 [5]
 Depending on the nature of the insurance contract, the partnership may have a nondiscretionary duty to apply the insurance funds to the debt it owes Hopkins Elevator. Under some circumstances the receipt of funds earmarked for another creates a type of "constructive trust" which can survive the bankruptcy of the debtor-"trustee". See generally Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962 (5th Cir.1983), Selby v. Ford Motor Co., 590 F.2d 642 (6th Cir.1979), In re Bagwell Coatings, Inc., 34 B.R. 193 (Bankr.M.D.La.1983). See also 4 Collier at p 541.13