Filed:  December 16, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 95-2641(L)
(CA-94-312-2)

American Bankers Insurance Company of Florida,

Plaintiff - Appellant,

versus

Jack D. Maness, etc.,

Defendant - Appellee.

O R D E R

The Court amends its opinion filed November 27, 1996, as follows:

On page 17, third full paragraph, line 1 -- the phrase "grant of summary judgment" is corrected to read "<u>denial</u> of summary judgment."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,
Plaintiff-Appellant,

and

UNITED STATES FIDELITY &
GUARANTY COMPANY,
Plaintiff,

v.

No. 95-2641

JACK D. MANESS, Trustee for the
Bankruptcy Estate of Joseph L.
Houska and Judy C. Houska,
Defendant-Appellee,

and

JOSEPH L. HOUSKA; JUDY C. HOUSKA;
CENIT BANK, F.S.B.,
Defendants.

UNITED STATES FIDELITY &
GUARANTY COMPANY,
Plaintiff-Appellant,

and

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,
Plaintiff,

v.

JACK D. MANESS, Trustee for the
Bankruptcy Estate of Joseph L.
Houska and Judy C. Houska,
Defendant-Appellee,

and

JOSEPH L. HOUSKA; JUDY C. HOUSKA;
CENIT BANK, F.S.B.,
Defendants.

No. 95-2642

2

UNITED STATES FIDELITY &
GUARANTY COMPANY; AMERICAN
BANKERS INSURANCE COMPANY OF
FLORIDA,
Plaintiffs-Appellees,

v.

JACK D. MANESS, Trustee for the

Bankruptcy Estate of Joseph L.
Houska and Judy C. Houska,
Defendant-Appellant,

No. 95-2643

and

JOSEPH L. HOUSKA; JUDY C. HOUSKA;
CENIT BANK, F.S.B.,
Defendants.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-94-312-2)

Argued: September 23, 1996

Decided: November 27, 1996

Before HALL, WILLIAMS, and MOTZ, Circuit Judges.

_____

Nos. 95-2641 and 95-2643 affirmed and remanded, and No. 95-2642
reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Hall and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** W. Charles Waddell, III, WADDELL & BARNES, P.C.,
Newport News, Virginia, for Appellant USF&G; Clayton Henson

3

Farnham, DREW, ECKL & FARNHAM, Atlanta, Georgia, for Appellant American Bankers. Robert Vincent Roussos, ROUSSOS & LANGHORNE, P.L.C., Norfolk, Virginia, for Appellee. **ON BRIEF:** J. H. Revere, III, WADDELL & BARNES, P.C., Newport News, Virginia, for Appellant USF&G; Phillip C. Griffeth, DREW, ECKL & FARNHAM, Atlanta, Georgia, for Appellant American Bankers.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this diversity case, two insurers appeal the district court's holding that the trustee for a bankruptcy estate was entitled to an interest in the payouts from one of two insurance policies covering the debtors' residence. The trustee cross appeals, asserting that the bankruptcy estate was entitled to an interest in the payouts of both policies. Because neither policy (nor the payouts from either of them) constituted property of the bankruptcy estate, the trustee had no right to funds stemming from either policy. Accordingly, we affirm the district court's grant of summary judgment to one insurer, we reverse the court's denial of summary judgment to the other insurer, and we remand for further proceedings.

I.

Although the parties do not dispute the material facts, the facts themselves are complicated. Furthermore, the timing of events is critical to our discussion. Accordingly, we set forth a chronology, which includes only those facts necessary to understand our holding. The opinion of the district court presents the facts in greater detail. See United States Fidelity & Guar. Co. v. Houska, 184 B.R. 494 (E.D. Va. 1995).

On August 27, 1991, Joseph and Judy Houska filed a bankruptcy petition under Chapter 11. On October 25, 1991, their creditors held a meeting pursuant to 11 U.S.C. § 341 (1988), at which Mr. Houska confirmed that a policy issued by the Home Insurance Company ("Home") covered the real property at issue here, a residence in Vir-

4

ginia Beach, Virginia. On April 30, 1992, the Houskas converted their Chapter 11 case to one under Chapter 7. On May 20, the court appointed Jack Maness as trustee of the estate, thereby removing control of the estate from the Houskas as debtors-in-possession. The conversion to Chapter 7 prompted another § 341 creditors' meeting, held on June 22. No one mentioned insurance coverage at this meeting.

Prior to the June 22 creditors' meeting but subsequent to the May 20 appointment of the trustee, the Houskas decided to change their homeowners insurance coverage. The Houskas decided to change insurers because Home refused to continue to provide them automobile insurance, and the Houskas, at the suggestion of their insurance agent, hoped to purchase a policy that would provide both car and home insurance at a discounted premium.[1] USF&G agreed to provide this coverage, and the Houskas determined to switch to that insurer. The USF&G policy that the Houskas chose became effective on June 19, 1992. On that date the Home policy expired, as the Houskas had cancelled the plan's automatic renewal. The Home and USF&G policies provided identical limits of liability: $662,000 for the "dwelling," and $496,500 for personal property.

_____

[1] The record provides no clear information as to when the Houskas decided to switch the policies. Home notified them of non-renewal of the Home automobile policy in a letter dated May 1, 1992; this letter provided the Houskas with the initial incentive to change insurers. But the record indicates that the Houskas took no action on this front until after they were relieved of their duties as debtors in possession by the trustee's appointment on May 20, 1992. Joseph Houska executed the cancellation of the homeowners portion of the Home policy on June 15, 1992, effective June 19, 1992. USF&G issued its policy on June 28, 1992, with retroactive coverage from June 19, 1992. These facts suggest that the Houskas made the decision to purchase the USF&G insurance not only after the May 20 appointment of Maness as the bankruptcy trustee but also after the June 22 creditors' meeting. Thus the record cannot support the argument that in arranging the USF&G policy, Mr. Houska was a debtor in possession and, therefore, was the acting trustee, purchasing the policy for the estate. The trustee at the time of the change of insurers was Maness, and he was not involved in the decision to cancel the Home policy or purchase the USF&G policy, nor at any time did he attempt to alter the USF&G policy to add the estate as an insured or a loss payee.

5

On August 7, 1992, fire destroyed the Virginia Beach residence. Local authorities determined that someone had intentionally set the fire, but as of the time of the district court opinion, authorities had not yet brought arson charges.

There were two deeds of trust on the property. Household Mortgage Corporation ("Household") held the first deed of trust. The USF&G policy listed the Houskas as the insured and Household as the named mortgagee. Household also had a contractual relationship with American Bankers Insurance Company ("American Bankers") compelling American Bankers to "force place" an insurance policy on any property in which Household was the mortgagee if either party determined that no other insurance covered it. In March 1993, after the fire loss, American Bankers mistakenly issued a policy that retroactively covered the Houskas' residence at the time of the fire. The American Bankers policy similarly lists the Houskas as the insured and Household as the named mortgagee.[2]

After the fire, the Houskas filed claims under both the USF&G and American Bankers policies, claiming losses of $1,243,096.01 for the dwelling and $647,350.05 for their personal property.[3] In view of the Houskas' claims that some of the real property and some of the personal property were exempt, the Houskas and trustee ultimately agreed to divide their claims. The Houskas abandoned any claim to insurance proceeds payable on the loss of real property, and agreed to pursue insurance payouts for the loss of the personal property only. In return, the bankruptcy trustee, Maness, agreed to drop all claims to insurance payments due on the loss of personalty and seek payment from the insurers solely for the damage to the real property.

_____

[2] Cenit Bank ("Cenit") holds a second deed of trust on the property in the amount of $200,000 plus interest and attorney's fees. Neither the USF&G nor the American Bankers policy lists Cenit as a named mortgagee, but under Virginia law, Cenit's security interest extends to insurance proceeds stemming from loss or damage to the collateral. See Va. Code Ann. § 8.9-306 (Michie 1991).

[3] In their bankruptcy petition, the Houskas valued their personal property at $13,190, claiming all of it as exempt. The government has indicted the Houskas for bankruptcy fraud in connection with this valuation, but that proceeding has no bearing on the determination of the issues in this case.

6

Collectively, the insurers paid the named mortgagee, Household, at least $571,633.91,**4** and in return, Household assigned the mortgage to them. Thereafter, on March 22, 1994, the insurers filed a complaint for declaratory judgment against the Houskas. The insurers alleged that the Houskas intentionally burned the house and falsely testified under oath as to the value of the destroyed property. For these reasons, the insurers asked the court to declare the policies void and the insurers not liable to the Houskas under the policies.

Both insurance policies have a provision which mandates that all claims be brought within two years of the date of loss. Although the record indicates that by March of 1993 the bankruptcy trustee, Maness, knew of the likely refusal of the insurance claim, at no time during the two years following the loss did he attempt to bring a claim on behalf of the estate. In December 1994, after the two year period had ended, the district court urged the trustee to intervene because the attorney for the Houskas sought leave to withdraw and the court feared that the Houskas would be proceeding pro se. Maness filed a motion to intervene; the court granted that motion on January 27, 1995.

The insurers moved for summary judgment against Trustee Maness on the grounds that he had failed to bring suit within the two year period required by the policy and was barred from recovery by the Houskas' arson and fraud. The insurers also argued that, in any event, the trustee had no interest in the insurance policies because they were issued post-petition. Maness filed a cross motion for summary judgment. He maintained that his claim was timely and moreover, that as the bankruptcy trustee, under this court's holding in Kremen v. Harford Mut. Ins. Co. (In re J.T.R. Corp.), 958 F.2d 602 (4th Cir. 1992) (per curiam), he was not subject to the insurers' defenses of fraud and arson that were available against the Houskas.

In ruling on the summary judgment motions, the district court held that "[u]nder Virginia law, payments pursuant to a contract of insur-

_____

**4** The record is unclear as to exactly how much the insurers paid to Household. The checks in the record and the accompanying cover letter indicate a total of $571,633.91; the lower court opinion states that the total amount was $679,316.75.

7

ance protecting against damage to property are <u>not</u> considered to be proceeds derived from the property itself . . . ." 184 B.R. at 501. For this reason the court determined that Trustee Maness had no interest in the proceeds of the American Bankers insurance policy, which had been issued post-petition, and so granted summary judgment to American Bankers with regard to the proceeds of that policy. Although the USF&G policy had also been issued post-petition, the court refused to apply the same rule to it. Instead the court concluded that the trustee had an interest in the USF&G policy because it was a "replacement policy" for the Home policy that became part of the bankruptcy estate at the time of petitioning. For this reason, the court denied summary judgment to USF&G.**5**

Upon the motion of the trustee, the district court certified its order for interlocutory appeal to this court pursuant to 28 U.S.C. § 1292(b) (1994). Both insurers and the trustee then noted appeals, and we agreed to consider the case.

II.

Our review of these summary judgment orders is <u>de novo</u> and we view all evidence in the light most favorable to the non-moving party. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996). The critical question in this case is whether the payouts of the USF&G and American Bankers policies are the property of the bankruptcy estate. If the payouts are not the property of the bankruptcy estate, the trustee has no interest in or right to those funds. On the other hand, if the payouts are the property of the bankruptcy estate, the trustee does have an interest in them and can make claim to them.

In determining what property is included in the bankruptcy estate, we look initially at what property the debtors (the Houskas) possessed at the time they filed their Chapter 11 petition (August 1991). "The commencement of a case under [the Bankruptcy Code] creates an estate. Such estate is comprised of . . . all legal or equitable interests

_____

**5** The court also ruled on various other arguments propounded by the parties and the parties appeal those rulings. In view of our holding, we need not reach those questions.

8

of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) (1994).

At the time the Houskas filed their Chapter 11 petition they unquestionably owned the Home insurance policy. That policy thus became an asset of their bankruptcy estate; debtors' insurance policies clearly constitute "interests" under § 541(a) of the Bankruptcy Code. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001 (4th Cir.) (holding that insurance policies existing at time of petition are property of estate), cert. denied, 479 U.S. 876 (1986); Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 55 (5th Cir. 1993) (collecting cases); 2 Collier on Bankruptcy ¶ 362.04 [3] (Lawrence P. King, 15th ed. 1996) ("The prevailing view is that an insurance policy is property of the estate . . . ."). However, the Home insurance policy was not in effect at the time of the fire, and the policies that were in effect at the time of the fire did not exist when the Houskas filed their Chapter 11 petition. Therefore we must determine whether insurance policies or payouts from those policies that were not property of the bankruptcy estate upon petitioning can later become estate property.

Generally, property not owned at the time of petition but only subsequently acquired by the debtor does not become property of the bankruptcy estate. See Vogel v. Palmer (In re Palmer), 57 B.R. 332, 333-34 (Bankr. W.D. Va. 1986). There are limited exceptions to this rule. Only two are arguably applicable here; both "[p]roceeds . . . of or from property of the estate" and "[a]ny interest in property that the estate acquires after the commencement of the case" can become part of the estate post-petition. 11 U.S.C. §§ 541(a)(6), 541(a)(7). Thus to prevail, the trustee must demonstrate that funds payable from the insurance policies are either "proceeds" of the underlying property, rather than just "proceeds" of the policies, or that the insurance policies themselves were property that the estate acquired after the commencement of the bankruptcy case.**6**

_____

**6** During oral argument, Maness suggested that § 541(a)(5) of the Bankruptcy Code provides a third avenue through which property acquired post-petition could enter the estate. Under § 541(a)(5), "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and

9

Although the trustee claims that the estate became a co-insured on the policies, he makes no claim that the estate, acting through its representative, acquired either policy. Nor does the trustee assert that estate funds were used to purchase either policy. Therefore the only way for Trustee Maness to claim an interest in the insurance payouts is if those funds were "proceeds" of the destroyed house, which was property of the estate, not merely proceeds of the USF&G and American Bankers insurance policies, which were not property of the estate.

The Supreme Court directed in Butner v. United States, 440 U.S. 48, 55 (1979), that:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Although the Bankruptcy Code superseded the specific holding of Butner, the Supreme Court has subsequently reiterated the Butner approach. See Barnhill v. Johnson, 503 U.S. 393, 397-398 (1992) ("[T]ransfer" is a term governed by federal law, as defined in the Bankruptcy Code, but "that definition in turn includes references to parting with `property' and `interest in property.' In the absence of any controlling federal law, `property' and `interests in property' are creatures of state law.") See also Nobelman v. American Sav. Bank, 508 U.S. 324, 329 (1993) (referring to state law to determine the definition of a creditor's "rights" because the Bankruptcy Code does not define the term) (specific holding superseded by statute); Ohio v. Kovacs, 469 U.S. 274, 285-86 (1985) (O'Connor, J., concurring) (noting that whether state's interest in bankrupt's obligation to clean up

_____

that the debtor acquires or becomes entitled to acquire within 180 days after such date" will enter the estate post-petition. However this "180 day rule" is strictly limited to property interests conveyed under particular enumerated circumstances, such as inheritance, divorce, or payment under a life insurance policy. Thus, § 541(a)(5) does not apply to this case.

10

hazardous waste is a lien on property, a perfected security interest, or an unsecured claim depends on state law).

To summarize then, while federal law creates the bankruptcy estate, Butner and the cases following it establish that state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework. Thus, we must first decide if a countervailing federal interest requires that we determine property interests here in a way different from that mandated by state law.

III.

Section 541(a)(6) of the Bankruptcy Code provides that the bank-ruptcy estate includes "proceeds" of estate property, without ever defining "proceeds." The statute's legislative history indicates that the term "[p]roceeds . . . is not used in a confining sense, as defined in the Uniform Commercial Code . . . ." S. Rep. No. 989, 95th Cong., 2d Sess. 83 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5869; H.R. Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6324. Rather, "proceeds" "is intended to be a broad term to encompass all proceeds of property of the estate. The conversion in form of property of the estate does not change its char-acter as property of the estate." Id.

Extrapolating from these pieces of legislative history, the Second Circuit has concluded that § 541(a)(6) dictates that insurance pay-ments be regarded as proceeds of the damaged property itself, not just of the insurance policy. Bradt v. Woodlawn Auto Workers, F.C.U., 757 F.2d 512, 515 (2d Cir. 1985) ("[T]he insurance payment for repairs to an automobile that is property of the estate unquestionably is also property of the estate."). Some courts, purportedly following Bradt, have asserted that § 541 "supersedes state law." See In re Asay, 184 B.R. 265, 267 (Bankr. N.D. Tex. 1995). See also In re Hoffmeister, 191 B.R. 875, 878-879 (D. Kan. 1996) (following Bradt as alternative holding), aff'd, ___ F.3d ___ (10th Cir. 1996); Payne v. Wood, 775 F.2d 202, 204 (7th Cir. 1985), cert. denied, 475 U.S. 1085 (1986).

It is not at all clear to us that the legislative history of § 541(a)(6) supports this result. See Unsecured Creditors Comm. v. Marepcon

11

Fin. Corp. (In re Bumper Sales, Inc.), 907 F.2d 1430, 1437 (4th Cir. 1990) (dismissing similar Congressional statement regarding interpretation of "proceeds" under 11 U.S.C. § 552 as "a vague and isolated piece of legislative history"). We note that in another portion of the legislative history, Congress stated that § 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." S. Rep. No. 989, at 82, 1988 U.S.C.C.A.N. at 5868; H.R. Rep. No. 595, at 367, 1988 U.S.C.C.A.N. at 6323.

Nor is it clear that Bradt and the cases following it really held that § 541(a)(6) required, as a matter of federal law even if state law provided to the contrary, that payments from insurance policies issued post-petition be regarded as property of the bankruptcy estate just because the property that those policies insured was property of the estate. In Bradt itself the court concluded that state law required the same result as that which the court believed to be mandated by § 541. See Bradt, 757 F.2d at 514-15. Furthermore, nothing in Bradt or any of the cases following it suggests that those cases involved insurance policies issued post-petition. Rather, it appears that the insurance policies considered in Bradt (and its progeny) were issued pre-petition and so the policies themselves constituted property of the bankruptcy estate. Any payments from pre-petition policies are indisputably "proceeds" of estate property; these additional facts would make the holding of Bradt an unremarkable one.

Indeed, the only case squarely to have confronted policies issued post-petition has held, under state law similar to that of Virginia, that payouts from post-petition policies are merely proceeds of the policies, not proceeds of the underlying property, and therefore not property of the estate. See In re CS Associates, 161 B.R. 144, 147 (Bankr. E.D. Pa. 1993) ("Under Pennsylvania law, an interest in the Debtor's real property and an interest in the [hazard] insurance proceeds arising from damages to that Property are two distinct things. Specifically, Pennsylvania courts have consistently held that insurance contracts are personal contracts of indemnity and that they protect the insured's interest in the property, but that they are not an indemnity on the property itself."), aff'd, 184 B.R. 458 (E.D. Pa. 1994).

In any event, we refuse to hold that § 541(a)(6) requires as a matter of federal law, that payouts from insurance policies be regarded as

12

proceeds of property of the bankruptcy estate merely because the property insured is part of the bankruptcy estate. American common law has long and firmly held that casualty payments from insurance policies do not stand in the place of the damaged property. "It is well established that . . . proceeds of a fire policy . .. [do] not arise from property, but from a personal contract between insurer and insured." 4 Collier on Bankruptcy ¶ 541.12 (15th ed. 1996); Columbia Ins. Co. v. Lawrence, 35 U.S. (10 Pet.) 507, 512 (1836) (citing "Lord Chancellor King, in Lynch v. Dalzell, (3 Bro.P.C. 497 s.c., 2 Marsh on Ins. b. 4, ch. 4, p. 803) . . . [as] saying, `these policies are not insurances of the specific things (goods) mentioned to be insured; nor do such insurances attach to the realty, or in any manner go with the same, as incident, . . . but they are only special agreements with the persons insured against such loss or damage as they may sustain.'"); Hopkins Ill. Elevator Co. v. Pentell (In re Pentell), 777 F.2d 1281, 1284 (7th Cir. 1985) ("[T]he insurance proceeds are not considered to be derived from the real property . . . ."). We think it unlikely that § 541(a)(6)'s mixed legislative history indicates a Congressional intent to reject this extensive body of common law.

Thus we are left without any countervailing federal interest requiring that the term "proceeds" be defined differently than it would be under state law.

IV.

Accordingly, we look to state law. See In re Estate of Medcare HMO, 998 F.2d 436, 441 (7th Cir. 1993) ("[W]hen Congress has not provided an explicit alternative to state law, we are mindful that the Bankruptcy Code was written in the shadow of state law and conclude that Congress intended state law to fill the interstices."). Specifically, we examine Virginia law to determine if these insurance payouts are proceeds of estate property or only proceeds of the policy. See, e.g., Fairfield v. United States (In re Ballard), 65 F.3d 367, 371 (4th Cir. 1995) (finding that Virginia property law determined whether creditors could reach proceeds of sale of jointly held estate property); Steyr-Daimler-Puch of America Corp. v. Pappas, 852 F.2d 132, 136 (4th Cir. 1988) (holding that under Virginia law, corporation has equitable interest in assets of alter ego and therefore alter ego claim at issue was "property of the estate" under § 541(a)(1)).

13

Under Virginia law, payments made pursuant to insurance contracts protecting against damage to property are <u>not</u> proceeds derived from the property itself. <u>Thompson v. Gearheart</u>, 119 S.E. 67, 69 (Va. 1923). <u>See also Lynch v. Johnson</u>, 84 S.E.2d 419, 422-23 (Va. 1954). This holding accords with the body of common law referred to above, defining the insurance contract as a personal contract between the insurer and insured, totally separate from the insured property. <u>See, e.g., Columbia Ins. Co.</u>, 35 U.S. (10 Pet.) at 512; <u>In re Pentell</u>, 777 F.2d at 1284.

The district court recognized this well established Virginia law. On the basis of it, the court correctly held that payouts from the American Bankers policy on the Houskas' house were not proceeds derived from the house itself, but only proceeds of a policy issued post-petition that never became part of the bankruptcy estate. Accordingly, the court properly granted summary judgment to American Bankers.

Although the USF&G policy, like the American Bankers policy, was not issued until long after the Houskas filed their bankruptcy petition and a significant amount of time after the Houskas ceased being debtors in possession, the district court found that the bankruptcy estate did have an interest in payouts from the USF&G policy. The court reasoned that the Houskas' creditors could have reasonably assumed that some insurance policy on the house continued in force, similar in terms to the Home policy, which had been disclosed at the first § 341 meeting in October of 1991. The court concluded that because the USF&G policy covered the same property, to the same extent, and was purchased through the same insurance agent as the Home policy, it was a "replacement policy" and so the court should treat it as if it were in fact the Home policy. According to the district court, the Houskas bought the USF&G policy in order to benefit the estate, feeling an obligation to maintain insurance protection at the same level as it had been at the time of petitioning. 184 B.R. at 502. Following this line of reasoning, the court held that the estate was, by implication, a third party beneficiary of the USF&G policy.

Under Virginia law, if someone purchases an insurance policy with the intent to benefit someone else, that third person does have a claim on the policy's proceeds. <u>See</u> Va. Code Ann.§ 55-22 (Michie 1995); <u>Lynch</u>, 84 S.E.2d at 423. However, this third party beneficiary doc-

14

trine only applies when "parties to [the contract to benefit the third party] `clearly and definitely intended' to confer a benefit upon him." Copenhaver v. Rogers, 384 S.E.2d 593, 596 (Va. 1989) (citations omitted) (holding that third party must be intended beneficiary of the contract, not just beneficiary of the estate and that "[t]he essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party"). Thus, Virginia law requires that both parties to the contract intend to benefit the third person. Richmond Shopping Ctr., Inc. v. Wiley N. Jackson Co., 255 S.E.2d 518, 523 (Va. 1979) ("[T]he third party must clearly show that the contracting parties definitely intended the contract to confer a benefit upon him; incidental beneficiaries may not sue thereon.") (citations omitted); Levine v. Selective Ins. Co. of America, 462 S.E.2d 81, 82-83 (Va. 1995) (finding Levines may be third party beneficiaries of insurance contract, noting that even though contract made no mention of the Levines, "all parties expressly understood that the beneficiaries of such Policy were the Levines").

Here, nothing evidences the requisite intent by both parties to the USF&G insurance contract. Even if the Houskas intended to benefit the bankruptcy estate, USF&G did not. USF&G may not have even known the Houskas were bankrupt. No mention of the estate appeared on the policy as an insured or a loss payee, although the Houskas certainly could have asked USF&G to write the policy that way, given that they were already Chapter 7 petitioners when they purchased the policy. No extrinsic evidence suggests that the parties to the contract agreed that anyone other than the Houskas and Household, the named loss payee, would benefit. Therefore, under Virginia law, the trustee had no more interest in the USF&G policy than in the American Bankers policy. Accordingly, the district court erred in refusing to grant summary judgment to USF&G.

V.

Although the trustee concedes that the district court erred in holding that the estate was a third-party beneficiary of the USF&G insurance policy, Appellee's Opening Brief at 23, the trustee nonetheless claims the estate has an interest in both policies for two reasons.

15

A.

First, the trustee relies on <u>Kremen v. Harford Mut. Ins. Co. (In re J.T.R. Corp.)</u>, 958 F.2d 602 (4th Cir. 1992) (per curiam). In <u>J.T.R.</u>, Kenny, a principal of the bankrupt debtor, J.T.R., intentionally burned J.T.R. property after the filing of J.T.R.'s Chapter 11 bankruptcy petition, but prior to the appointment of the bankruptcy trustee. When Kenny committed the arson, J.T.R. was a debtor in possession and as such the corporation became a fiduciary of its bankruptcy estate. The filing of the corporation's bankruptcy petition had made Kenny "a third party to the transaction." <u>Id.</u> at 605. Accordingly, the fraud defenses that barred Kenny from recovery were not effective against J.T.R.'s bankruptcy trustee.

<u>J.T.R.</u> is inapposite here because the insurance policy at issue in <u>J.T.R.</u> had been issued on November 3, 1978, seven months <u>before</u> the June 1979 filing of the Chapter 11 petition. <u>Kremen v. Harford Mutual Ins. Co. (In re J.T.R. Corp.)</u>, Bankr. No. 79-00999-L, Civ. No. M 82-1159, at 1-2 (D. Md. Dec. 5, 1986). Thus, in <u>J.T.R.</u>, unlike the case at hand, the policy clearly constituted an asset of the estate. <u>J.T.R.</u> does not suggest, let alone hold, that insurance policies purchased post-petition are somehow, because of the insured's arson, converted into estate property. All that <u>J.T.R.</u> holds is that arson by the debtor's principal <u>after</u> a bankruptcy petition has been filed does not bar the bankruptcy estate from recovering under an insurance policy that is itself a part of the bankruptcy estate, even if the principal would be barred from recovery under the policy.

Contrary to Trustee Maness' suggestion, our holding in this case does not mean a bankruptcy trustee could never recover under a post-petition insurance policy that does not designate the estate as the insured. A trustee could recover under such a policy, but the trustee would have to do so through an equitable lien on the proceeds. When pursuing an equitable lien, the trustee could, of course, only recover if the named insured (the bankrupt) could recover. Thus, in the case at hand, Trustee Maness' pursuit of an equitable lien would not enable him to circumvent the arson and fraud defenses available against the Houskas.

16

B.

In addition to his J.T.R. argument, Trustee Maness claims that a holding that payouts from post-petition insurance policies are not assets of the bankruptcy estate would place on the bankruptcy trustee the "impossible burden of policing whether the debtor has named the bankruptcy trustee on an insurance policy [and] whether [the policy] is [a] new one or a replacement one." Appellee's Opening Brief at 26.

Our holding does require a trustee to pay attention to the safety of the bankruptcy estate and preservation of its assets. We do not believe, however, that requiring the trustee to determine whether estate property is insured by policies owned by the estate or those in which the estate or trustee are named insureds imposes an extraordinary burden. See, e.g., Yadkin Valley Bank & Trust Co. v. Northwestern Bank (In re Hutchinson), 132 B.R. 827, 832 (Bankr. M.D.N.C. 1991) ("A trustee . . . has a duty to exercise reasonable diligence to preserve and protect [estate] property."), aff'd and remanded, 5 F.3d 750, 758 (4th Cir. 1993). If the burden imposed is so onerous as to defeat the intent and purpose of the Bankruptcy Code, then Congress must act. But until Congress provides a federal definition of "proceeds" which clearly includes payouts of insurance policies issued post-petition and purchased without using estate assets, a court must look to state law. State law will determine if such payouts constitute proceeds of estate property. See Butner, 440 U.S. at 35.

VI.

We therefore affirm the district court's denial of summary judgment to American Bankers and reverse its grant of summary judgment to USF&G. We remand the case for further proceedings consistent with this opinion.

Nos. 95-2641 and 95-2643 - AFFIRMED AND REMANDED
No. 95-2642 - REVERSED AND REMANDED

17